

)     **UNITED STATES DISTRICT COURT**
)     **NORTHERN DISTRICT OF ILLINOIS**

Val Sklarov,
     Plaintiff,

     v.

First Bank of Highland Park
Fidelity National Title Group     19cv2739
Fidelity National Finance     Judge Lee
Jill Takiff Hirsh     Mag. Judge Cole
Randy L. Green
Eric A. Ephraim,
     Defendants.

VERIFIED COMPLAINT

**FILED**

APR 2 3 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## VERIFIED COMPLAINT

**NOW COMES, Val Sklarov (hereinafter referred to as "SKLAROV" or Plaintiff)** by

and through the undersigned attorney, files this First Verified Complaint for violations of Title 15

U.S.C. §1692 et seq. Fair Debt Collection Practices Act (hereinafter known as "FDCPA"), 15

U.S.C §1601 et seq. Truth in Lending Act (hereinafter known as "TILA"), 42 U.S.C §3601 et seq.

Fair Housing Act (hereinafter known as "FHA") and Declaratory Judgment and Injunctive Relief,

for damages based the fact that on or about April 10, 2018 First Bank of Highland park (hereinafter

known as "FBHP") provided documents to Plaintiff for the first time concerning the sale of the

real property commonly known 680 Huron Hills Trial, Round Lake Heights, Illinois 60073

(hereinafter known as "Property") after denying and ignoring several requests from attorneys for

Plaintiff. At no point prior to April 10, 2018, Plaintiff consented, in writing or verbally, to the sale

of Property. In furtherance, the Plaintiff hereby states as follows:

1

## I.     INTRODUCTION

1.  This is a civil rights action under 42 U.S.C.§1983 for violations of Plaintiff's constitutional

     rights as enumerated under the First, Fifth, Seventh and Fourteenth Amendments to the United

     States Constitution.

2.  Plaintiff invokes the Power of this Court's rights for the deprivation of Plaintiff's Due Process

     rights; deprivation of Plaintiff's right to redress grievances and access to court; deprivation of

     Plaintiff's right to property; and for the deprivation of Plaintiff's right to have a Trial by Jury,

     as afforded under the First, Fifth, Seventh, and Fourteenth Amendments of the United States

     Constitution, and, as found in the Illinois State Constitution.

3.  Plaintiff likewise seeks redress for violations by the Defendants as afforded Plaintiff under

     Title 15 U.S.C. §1692 et seq. and state applicable consumer laws to be included in Plaintiff's

     Complaint proving that this case and the wrongful sale of Property were based upon forged

     and fraudulent documents.

4.  Additionally, Plaintiff invokes this Court's authority to determine salient questions of contract:

     including, but not limited to, controversies arising out of potential fraudulent and forged

     documents and misrepresentations to the court.

5.  Plaintiff also invokes this Court's authority to order an adversarial hearing on the intentional

     and malicious use of forged and fraudulent documents in an attempt to deny Plaintiff their

     procedural and substantive due process rights.

6.  Plaintiff lastly invokes this Courts authority under Title 15 U.S.C. § 1692(e)(k).

7.  Plaintiff is seeking actual damages, treble damages, statutory and punitive damages, and award

     the financial damages suffered by Plaintiff for this Federal District Court has ancillary

     jurisdiction to hear this case and rule on the relief requested to vacate, alter, amend  pursuant

to Federal Rule of Civil Procedure 59 and any another amount deemed to be prudent by the Court, for their pain and suffering due to these omissions by these named Defendants and yet unnamed perpetrators of the Fair Debt Collection Practices Act Title 15 U.S.C. §1692 et seq.

8.  Plaintiff seeks damages caused by the Defendants for the intentional infliction of mental distress; negligent infliction of mental distress, and for the creation of forged and fraudulent Promissory Note and Mortgage thus committing fraud upon the court by the use of extrinsic and intrinsic fraud, fraudulent misrepresentation and breach of the implied covenant of good faith and fair dealings.

9.  The rapacious Defendants, intentionally, wantonly, deliberately, maliciously, fallaciously and willfully conspired in a well-orchestrated scheme to illegally take possession of Plaintiff's home through a scheme to defraud both the Plaintiff's and the Illinois Courts.

10. The Defendants are supposed to be trusted organizations that the American people rely on to handle and care for their hard-earned money. We as a society cannot stand for supposedly trusted organizations to take advantage of the American people. In fact, when banks fell into trouble, the American people had their hard-earned money be directed into the Troubled Asset Relief Program (hereinafter known as "TARP"), which helped prevent banks from going out of business. The TARP was a loss on the American people's hard-earned capital, where banks used rapacious tactics in order to line their pockets. Defendant's in this case employed similar tactics in order to deprive Plaintiff of his hard-earned money.

11. This Court must therefore provide the requested relief based upon numerous U.S. Supreme Court decisions that make it very clear that judgment procured through extrinsic fraud and even intrinsic fraud upon the Courts is enough to reverse or vacate the illegal sale and sanction the participants of this conspiratorial enterprise.

## II.     JURISDICTION AND VENUE

12. Plaintiff's domicile is Georgia.

13. FBHP is a duly authorized Bank & Trust authorized to conduct banking and trust activities in the state of Illinois by the Illinois Department of Financial and Professional Regulation bearing Registration Number ISB.0017814 with its principal place of business at 1835 First Street, Highland Park, Illinois 60035.

14. Fidelity National Title Group and their parent company Fidelity National Finance (hereinafter collectively known as "Fidelity") is duly authorized to conduct insurance and financial services businesses across the nation with its principal place of business at 601 Riverside Avenue, Jacksonville, FL 32204.

15. Defendant Jill Takiff Hirsh's domicile is Illinois.

16. Defendant Randy L. Green's domicile is Illinois.

17. Defendant Eric A. Ephraim's domicile is Illinois.

18. This action arises under the United States Constitution, particularly, for violations of Plaintiffs' rights under the First, Fifth, Seventh and Fourteenth amendments; and, under Federal Law, as enumerated under 28 U.S.C. §§2201, and 2202.

19. This Court has original jurisdiction over Plaintiff's claim by operation of 28 U.S.C. §§1331 and, supplemental jurisdiction over Plaintiff's state Claims, pursuant to 28 U.S.C. §1367.

20. This Court is vested with authority to issue the requested Declaratory Relief, pursuant to 28 U.S.C. §2201 and, as further under Rule 57, of the Federal Rules of Civil Procedure.

21. This Court has the authority to issue relief from a Judgment under Federal Rules of Civil procedure 60(d)(1) and (3) "independent action" and pursuant to 28 U.S.C. §§2201 and 2202.

22. This Court has the authority to award the requested Injunctive Relief, under Rule 65 of the Federal Rules of Civil Procedure, and pursuant to 28 U.S.C. §§2202.

23. This Court has the authority to award Plaintiffs, damages arising under violations of Title 15 U.S.C. §1692 §1692k(d). The jurisdiction of this Court is not disputed.

24. Plaintiffs aver venue is proper under 28 U.S.C. §1391 as the claims set forth in this complaint arose here.

25. This Court has the right and duty to invoke sanctions under Federal Rules of Civil Procedure 11 against these Defendants for violating their Professional Codes of Conduct for the illegal sale of Property.

26. This Court has the authority to void the Sale.

27. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000.00.

### III.    PARTIES

28. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

29. Plaintiff and at all times material and relevant hereto, is a consumer according to Title 15 U.S.C. (§1692(a) (3) [§803(3)] and is identified under §1692e (§807) as a "least sophisticated consumer" or even possibly the "least susceptible consumer" under (§1692(f) [§808] according to the act.

30. At all times material and relevant hereto, Plaintiff is alleged to have owed a "debt" ("transaction") of a personal, family, and/or household nature as defined by the FDCPA, Title 15 U.S.C. §1692a(5) [§803(5)].

31. FBHP is a Federal Deposit Insurance Corporation (hereinafter known as "FDIC") member bank. The FDIC was created post 1929 crash in 1933 to instill trust and confidence in the American financial system, particularly banks. The American public depends on FDIC and its member banks to uphold the law and safeguard depositor's assets. The American public also trusts that all FDIC members will not abuse its clients, mismanage their deposits or engage in other shady practices which led to the 1929 financial crash. The public has come to trust and depend on the FDIC symbol which banks display so prominently and proudly. FBHP like all banks displays the FDIC membership symbol and FBHP took advantage of its FDIC membership charter to sell plaintiffs asset and unjustly enrich itself. FBHP misled Plaintiff that as an FDIC chartered member, it complies with Federal laws."

32. At all times material and relevant hereto, Defendants have advanced and willfully, deliberately, with malicious intent participated in a well-organized plan to steal homes, where Defendants had privileged information about the finances of the Property.

## IV.    FACTS COMMON TO ALL COUNTS

33. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

34. On or about August 7, 2007 Plaintiff and FBHP entered into a mortgage for the real property commonly known 680 Huron Hills Trial, Round Lake Heights, Illinois 60073 to secure an indebtedness not to exceed $3,860,000.00, a copy of which is attached as Exhibit A.

35. On or about October 9, 2007 Plaintiff and FBHP entered into a modification of mortgage concerning the Property which raised the maximum indebtedness to $6,280,500.00 (the "Indebtedness"), a copy of which is attached as Exhibit B.

36. The Indebtedness was secured by other properties either owned jointly with or exclusively by Plaintiff's ex-wife Sharon Sklarov which are not relevant to these proceedings.

37. The Defendants have preferred Sharon Sklarov over Plaintiff in a number of ways at the detriment of Plaintiff.

38. FBHP has filed a foreclosure action against Plaintiff in the Circuit Court of Lake County entitled First Bank of Highland Park v. Val Sklarov et al., 2016 CH 1548 (the "Lake County Matter") to foreclose on a mortgage against the real property commonly known as 460 Hunter Lane, Lake Forest, Illinois 60045 (the "Lake Forest Property").

39. The Lake Forest Property was at one time used to secure the indebtedness.

40. On April 10, 2018 FBHP provided documents to Plaintiff for the first time concerning the sale of the Property (the "Documents") after denying and ignoring several requests from attorneys for Plaintiff and Plaintiff for the same on April 10, 2018, the Documents are attached as Exhibit C.

41. The Documents produced by FBHP show that FBHP sold the Property allegedly in the name of Plaintiff but without any signature from Plaintiff on the documents. Exhibit C.

42. At no time did Plaintiff agree to, or execute any documents for, a deed in lieu of foreclosure, a short sale in foreclosure, a consent foreclosure, a common law strict foreclosure, a judicial foreclosure or a power of sale for the Property.

43. FBHP received $100,761.13 pursuant to the sale of the Property.

44. Plaintiff received no funds pursuant to the sale of the Property.

## V.    FIRST CLAIM FOR RELIEF

### FORGERY

45. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

46. Without the consent and signature of the Plaintiff, the illegal sale of the Property cannot be upheld and attached exhibits portray that no consent existed.

47. Through discovery, plaintiff intends to reveal to the tribunal, Defendants must have forged a number of legal documents in order to consummate the illegal sale of the Property.

48. Exhibit C shows a Contract for the Sale of Property and under the contract, no signature by the Plaintiff is present. Further, on a few pages, the initials "VS" in a circle appears and the Plaintiff maintains that those initials were not placed there by him, nor has Plaintiff given authority to any other party to insert initials on his behalf.

49. The Defendants knew or should have known that their actions were based upon forged and fraudulent documents forcing Plaintiffs to spend thousands of dollars trying to save their home from these violations of the FDCPA including but not limited to Title 15 U.S.C. §1692 §1692d(1),      [§806d(1)]      §1692e(2)(A)      [§807e(2)(A)],      §1692e(3)[§807e(3)], §1692e(4)[§807e(4),]

## VI.    SECOND CLAIM FOR RELIEF

### FRAUD AND MISREPRESENTATION

50. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

51. During the deposition of FBHP's Patrick Stallone and prior to FBHP providing the Documents, Mr. Stallone testified on behalf of FBHP that FBHP followed all legal requirements concerning

the sale of the Property and that Plaintiff executed the necessary documents for FBHP to sell the Property.

52. The Documents do not contain the signature of Plaintiff.

53. Plaintiff did not consent to the sale of the Property.

54. FBHP did not follow the requirements of Illinois law when it sold the Property and terminated Plaintiff's interest in the Property.

55. On information and belief, Mr. Stallone knew at the time of his deposition that Plaintiff did not agree to, or execute the necessary documents, for FBHP to sell the Property.

56. Plaintiff relied on the statements made by Mr. Stallone to his detriment.

57. As a direct and proximate result of the fraudulent statements Plaintiff incurred damages.

## VII.   THIRD CLAIM FOR RELIEF

## FAIR DEBT COLLECTION PRACTICES ACT

58. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

59. The above named Defendants have, intentionally and wantonly conspired together to violate the mentioned above and never produced the files as required by §1692e(3).

60. Defendants knowingly misrepresented material facts by the use of extrinsic fraud thus giving this Court the legal authority to grant the relief requested.

61. Plaintiff seeks damages caused by the Defendants for the intentional infliction of mental distress; negligent infliction of mental distress, and for the extreme and egregious measures in order illegally sell Property, thus committing fraud upon the court by the use of extrinsic and intrinsic fraud, fraudulent misrepresentation and breach of the implied covenant of good faith and fair dealings.

62. Plaintiff demands punitive damages which are offered in all claims.

63. Plaintiff demands that judgment be entered against Defendants for actual damages pursuant to 15 U.S.C. § 1692k (a) (1).

64. Plaintiff prays that judgment be entered against aggregate defendants for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A).

65. Plaintiff prays that the Court awards costs and reasonable attorney's fees (when and if applicable) pursuant to U.S.C. §1692k(a)(3).

66. This Court must accept all the allegations in this Complaint as true and this Court must admit there are at least five claims for Relief that can be granted and all it takes is one claim or one violation to survive a Motion to Dismiss.

67. Plaintiff reserves the right to file an amended complaint and submit other affidavits from retired banking executives, accountants and other expert witnesses and well as the forensic examiners.

68. Plaintiff reserves the right to submit his supporting brief on why this Court has authority to grant this relief requested under the Supreme Court's ruling: "…every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside the fraudulently begotten judgment…. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud". Mr. Justice Black also said "... tampering with the administration of justice as indisputably shown here involves far more than injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistent with the good order of society." See the U.S. Supreme Court case

Throckmorton which explains how this Federal Court has the right to grant this Plaintiff relief for violations of this Plaintiff's Constitutional rights because of Fraud upon the Court.

## IIX. FOURTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

69. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

70. The Mortgage states in relevant part:

**Sale of the Property.** To the extent permitted by applicable law, Borrower [Plaintiff] and Grantor [FBHP] hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. See Exhibit A page 9.

71. 35 ILCS 5/15-1401 through 735 ILCS 5/15-15-1405 is entitled "Methods of Terminating Mortgagor's Interest in Real Estate".

72. FBHP breached the Mortgage by failing to terminate Plaintiff's interest in the property as required under the Mortgage and pursuant to 735 ILCS 5/15-1401 through 735 ILCS 5/15-15-1405 before its sale of the Property.

73. As a proximate cause of FBHP's breach Plaintiff has sustained damages.

## IX. FIFTH CLAIM FOR RELIEF

### CONVERSION

74. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

75. Conversion is a tort that exposes you to liability for damages in a civil lawsuit. It applies when someone intentionally interferes with personal property belonging to another person. To make out a conversion claim, a plaintiff must establish four elements:

a. First, that the plaintiff owns or has the right to possess the personal property in question at the time of the interference;

b. Second, that the Defendants intentionally interfered with the plaintiff's personal property (sometimes also described as exercising "dominion and control" over it);

c. Third, that the interference deprived the plaintiff of possession or use of the personal property in question; and

d. Fourth, that the interference caused damages to the plaintiff.

76. Plaintiff contends that he had over $50,000.00 USD in personal property within the Property.

77. Defendants intentionally interfered with the personal property by illegally selling the premises without the knowledge of Plaintiff.

78. The Defendants has deprived Plaintiff of his rightful belongings.

79. The interference has caused Plaintiff to permanently lose domain and possession of the personal property.

## X.    SIXTH CLAIM FOR RELIEF

## DEPRIVATION OF RIGHTS

80. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

81. Under 42 U.S.C § 1983, Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission

12

taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

82. Plaintiff acquired Property for the specific purpose of improving it, renovating it, and generally speaking to "add value" to what is generally considered an "appreciating asset."

83. Under the Amendment V to the US Constitution, James Madison wrote in relevant part "No person shall be... deprived of life, liberty, or property, without due process of law."

84. Defendants has illegally sold Plaintiff's property with no due process rights afforded.

85. Defendants has committed an egregious act in order to purposely deprive the Plaintiff's right to own property and to make a living, without just cause.

## XI.    SEVENTH CLAIM FOR RELIEF

## THE EQUAL CREDIT OPPORTUNITY ACT

86. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

87. The Equal Credit Opportunity Act (hereinafter referred to as "ECOA") (codified at 15 U.S.C. § 1691 et seq.), enacted 28 October 1974, that makes it unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction, on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The law applies to any person who, in the ordinary course of business, regularly participates in a credit decision, including banks, retailers, bankcard companies, finance companies, and credit unions.

88. Defendants gave preferential treatment to Sharon Sakharov with regards to property in the same or similar situation.

89. Defendants did not deprive Sharon of her Property as they did with Plaintiff, despite the fact that this matter arises out of the same or similar circumstance.

90. Defendants sold Property illegally due to discrimination on the basis of gender.

## XII.  EIGTH CLAIM FOR RELIEF

### FAIR HOUSING ACT

91. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

92. The Fair Housing Act (hereinafter referred to as "FHA") was enacted as Title VIII of the Civil Rights Act of 1968, and codified at 42 U.S.C. 3601-3619, with penalties for violation at 42 U.S.C. 3631 et seq.

93. The FHA forbids discrimination in all aspects of residential real-estate related transactions, including:

    a.  making loans to buy, build, repair, or improve a place to live;

    b.  selling, brokering, or appraising residential real estate; and

    c.  selling or renting a place to live

94. Defendants sold Property illegally due to discrimination on the basis of gender.

## XIII.  NINTH CLAIM FOR RELIEF

### PROMISSORY ESTOPPEL

95. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

96. Under Illinois law, promissory estoppel is an offensive, equitable cause of action frequently asserted by a party as an alternative to a breach of contract claim. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.* 906 N.E 2d 520, 524, 528 (Ill. 2009).

97. Illinois Supreme Court has explained, the doctrine of promissory estoppel has been incorporated into the Restatement (Second) of Contracts as section 90 and provides, in relevant part, that a promise which the promisor should reasonably expect to induce action or forbearance is binding if the injustice can be avoided only by enforcement of the promise. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.* 906 N.E 2d 523 (Ill. 2009).

98. Plaintiff is asserting this Ninth Claim for Relief and an alternative to the breach of contract claim under Fourth Claim for Relief and portrayed above.

99. Plaintiff relied on modification documents and altered his financial circumstances in reliance of the fact that Defendants stated they would not sell the property without Plaintiff's written consent to sell.

100.    Plaintiff, until discovery of the illegal sale, relied on the property financially and has thus incurred significant damages along with emotional suffering.

### XIV.  TENTH CLAIM FOR RELIEF

### NEGLIGENCE

101.    Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

102.    735 ILCS 5/15-1405 states:

No real estate within this State may be sold by virtue of any power of sale contained in a mortgage or agreement, and all such mortgages may only be foreclosed in accordance with this Article.

103.    Pursuant to 735 ILCS 5/15-1405 FBHP owed Plaintiff an independent duty not to sell Property except as provided for discussed in 735 ILCS 5/15-1405.

104.    Defendants breached this duty by illegally selling Property without following the requirements under Illinois law.

105.    As a direct result and proximate result of Defendants, breach of its duty owed to Plaintiff, Plaintiff incurred significant damages.

### XV.    ELEVENTH CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

106.    Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

107.    Plaintiff and FBHP had a complex business relationship for a period of nearly 20 years.

108.    During this relationship Plaintiff and FBHP entered into countless financial transactions exceeding $50,000,000.00.

109.    Plaintiff was one of FBHP largest clients from the 1990s through the 2010s.

110.    As a result of the relationship between Plaintiff and FBHP, FBHP owed Plaintiff a fiduciary duty.

111.    FBHP breached the fiduciary duty owed to Plaintiff by its sale of the Property without the consent of Plaintiff or by following the requirements of Illinois law.

112.    As a direct and proximate result of FBHP's breach of the fiduciary duty owed to Plaintiff, Plaintiff sustained damages.

## XVI.  TWELFTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

113.   Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified

Complaint as if they were printed verbatim herein below.

114.   To state a claim for unjust enrichment, "a plaintiff must allege that the Defendants has

unjustly retained a benefit to the plaintiff's detriment, and that Defendants' retention of the

benefit violates the fundamental principles of justice, equity, and good conscience." *HPI*

*Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672,

679 (1989).

115.   Unjust enrichment is not an independent cause of action. *Martis v. Grinnell Mutual*

*Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (2009) (citing *Mulligan v.*

*QVC, Inc.*, 382 Ill. 2d 620, 631, 888 N.E.2d 1190, 1200 (1989)). Rather, "it is a condition that

may be brought about by unlawful or improper conduct as defined by law, such as fraud,

duress, or undue influence" (internal quotation marks omitted) (*Alliance Acceptance Co. v.*

*Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995)), or,

alternatively, it may be based on contracts which are implied in law (*Perez v. Citicorp*

*Mortgage, Inc.*, 301 Ill. App. 3d 413, 425, 703 N.E.2d 518, 526 (1998)).

116.   FBHP was unjustly enriched by the sale of the Property in the amount of $100,761.13.

117.   Plaintiff has suffered an injury as a result of FBHP's unjust enrichment.

## XVII.  RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

118.   The Racketeer Influenced and Corrupt Organizations Act (hereinafter known as "RICO")

is a United States federal law that provides for extended criminal penalties and a civil cause of

action for acts performed as part of an ongoing criminal organization.

119.    RICO focuses specifically on racketeering and allows the leaders of a syndicate to be tried for the crimes they ordered others to do or assisted them in doing, closing a perceived loophole that allowed a person who instructed someone else to.

120.    Defendants collectively colluded in order to defraud and steal property from Plaintiff.

121.    The meaning of racketeering activity is set out at 18 U.S.C. § 1961. As currently amended it includes; any act of bribery, counterfeiting, theft, embezzlement, fraud, dealing in obscene matter, obstruction of justice, slavery, racketeering, gambling, money laundering, commission of murder-for-hire, and many other offenses covered under the Federal criminal code (Title 18).

## XVIII. CIVIL CONSPIRACY

122.    A civil conspiracy or collusion is an agreement between two or more parties to deprive a third party of legal rights or deceive a third party to obtain an illegal objective.

123.    A conspiracy may also refer to a group of people who make an agreement to form a partnership in which each member becomes the agent or partner of every other member and engage in planning or agreeing to commit some act.

124.    It is not necessary that the conspirators be involved in all stages of planning or be aware of all details. Any voluntary agreement and some overt act by one conspirator in furtherance of the plan are the main elements necessary to prove a conspiracy.

125.    A conspiracy may exist whether legal means are used to accomplish illegal results, or illegal means used to accomplish something legal. Even when no crime is involved, a civil action for conspiracy may be brought by the persons who were damaged. *Salinas v. United States*, 522 U.S. 52, 63—65 (1997).

## XIX.  JUDICIAL NOTICE

126.    Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified
        Complaint as if they were printed verbatim herein below.

127.    The **Troubled Asset Relief Program** is a program of the United States government to
        purchase toxic assets and equity from financial institutions to strengthen its financial sector
        that was passed by a Democratic Party controlled Congress and signed into law by Republican
        Party President George W. Bush on October 3, 2008. It was a component of the government's
        measures in 2008 to address the subprime mortgage crisis. The TARP program originally
        authorized expenditures of $700 billion. **The Emergency Economic Stabilization Act of
        2008** created the TARP program. The **Dodd–Frank** Wall Street Reform and **Consumer
        Protection Act**, signed into law in 2010, reduced the amount authorized to $475 billion. By
        October 11, 2012, the Congressional Budget Office stated that total disbursements would be
        $431 billion, and estimated the total cost, including grants for mortgage programs that have
        not yet been made, would be $24 billion. On December 19, 2014, the U.S. Treasury sold its
        remaining holdings of Ally Financial, essentially ending the program. TARP recovered funds
        totaling $441.7 billion from $426.4 billion invested, earning a $15.3 billion profit or an
        annualized rate of return of 0.6% and perhaps a loss when adjusted for inflation.

128.    The **Federal Deposit Insurance Corporation** is a United States government corporation
        providing deposit insurance to depositors in U.S. commercial banks and savings institutions.
        The FDIC was created by the **1933 Banking Act**, enacted during the Great Depression to
        restore trust in the American banking system. More than one-third of banks failed in the years
        before the FDIC's creation, and bank runs were common. The insurance limit was initially
        US$2,500 per ownership category, and this was increased several times over the years. Since

the passage of the **Dodd–Frank** Wall Street Reform and Consumer Protection Act in 2011, the FDIC insures deposits in member banks up to US$250,000 per ownership category. The FDIC and its reserves are not funded by public funds; member banks' insurance dues are the FDIC's primary source of funding. The FDIC also has a US$100 billion line of credit with the **United States Department of the Treasury**. Only banks are insured by the FDIC; credit unions are insured up to the same insurance limit by the **National Credit Union Administration**, which is also a government agency.

129. "... [Rule 60(b)] stipulates that 'This rule does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud upon the court. " The Supreme Court in **United States v. Throckmorton.**

130. A court may at any time set aside a judgment for after discovered fraud upon the court. **Hazel-Atlas Glass v. Hartford** . . . Rule 60(b) . . . expressly does not limit the power of a court to entertain an action for that purpose."

131. Federal Courts can always set aside a decision that has been obtained through extrinsic fraud. **Cord v. Smith**, 370 F.2d 418 (C.A. Cal. 1966).

132. **Shekhter of NMS Properties vs. AEW Capital** in Los Angeles Superior Court the Court ruled in favor of AEW Capital and awarded over 6 Million dollars against Shekhter for presenting forged and fraudulent documents to the court to support his complaint against AEW, plus the real estate developer (NMS) was ordered to vacate nine properties that were part of the NMS/AEW joint venture.

133. In order to understand the meaning of "fraud on the court" is it imperative that this court reference **Hazel Atlas Glass Co. v. Hartford Empire Co.** for a full understanding of the meaning of the phrase. There is little doubt that in the majority of states the only type of fraud

upon which a court of equity will upset a judgment is extrinsic fraud. **United States v. Throckmorton** 98 U.S. 61, 68 (1878). Clearly the Throckmorton case established that extrinsic fraud would vacate a judgment that was procured through the extrinsic creation of a fraudulent Promissory Note and a Mortgage or Deed of Trust (without any statutory limit of one year).

134.    Justice Black even stated that the agencies of public justice are not so impotent that they must always be mute and helpless (to) victims of deception and fraud. Justice Black even stated that tempering with the administration of justice as indisputable as shown in this particular case involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public institutions in which fraud cannot complacently be tolerated and is contrary and not consistent with good order of society. In another United States Supreme Court decision, **Universal Oil Products v. Root Refining Co.**, 328 U.S. 575 (1945), cited the Hartford case, Justice Black additionally stated, "The inherent power of a federal court to investigate whether a judgment was obtained by fraud is beyond question."

135.    It is a wrong against the institutions set up to protect and safeguard the public institutions in which fraud cannot complacently be tolerated consistent with good order or society. In another United States Supreme Court decision, **Universal Oil Products v. Root Refining Co.**, 328 U.S. 575 (1945).

136.    The **Fair Debt Collection Practices Act** (FDCPA), Pub. L. 95-109; 91 Stat. 874, codified as 15 U.S.C. § 1692 –1692p, approved on September 20, 1977 (and as subsequently amended) is a consumer protection amendment, establishing legal protection from abusive debt collection practices, to the Consumer Credit Protection Act, as Title VIII of that Act. The statute's stated purposes are: to eliminate abusive practices in the collection of consumer debts, to promote

fair debt collection, and to provide consumers with an avenue for disputing and obtaining validation of debt information in order to ensure the information's accuracy. The Act creates guidelines under which debt collectors may conduct business, defines rights of consumers involved with debt collectors, and prescribes penalties and remedies for violations of the Act. It is sometimes used in conjunction with the **Fair Credit Reporting Act**.

137. The 1968 **Fair Housing Act** is a federal act in the United States intended to protect the buyer or renter of a dwelling from seller or landlord discrimination. Its primary prohibition makes it unlawful to refuse to sell, rent to, or negotiate with any person because of that person's inclusion in a protected class. The goal is a unitary housing market in which a person's background (as opposed to financial resources) does not arbitrarily restrict access. Calls for open housing were issued early in the twentieth century, but it was not until after World War II that concerted efforts to achieve it were undertaken. The fair housing act played an important part in the Civil rights movement causing people to see how they needed to give African Americans equal rights with things including fair housing.

138. The **Equal Credit Opportunity Act** (ECOA) is a United States law (codified at 15 U.S.C. § 1691 et seq.), enacted 28 October 1974, that makes it unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction, on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The law applies to any person who, in the ordinary course of business, regularly participates in a credit decision, including banks, retailers, bankcard companies, finance companies, and credit unions. The part of the law that

defines its authority and scope is known as **Regulation B**, from the (b) that appears in Title 12 part 1002's official identifier: 12 C.F.R. § 1002.1(b) (2017). Failure to comply with **Regulation B** can subject a financial institution to civil liability for actual and punitive damages in individual or class actions.

139.    The **Fair Credit Reporting Act** (FCRA), 15 U.S.C. § 1681, is U.S. Federal Government legislation enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies. It was intended to protect consumers from the willful and/or negligent inclusion of inaccurate information in their credit reports. To that end, the FCRA regulates the collection, dissemination, and use of consumer information, including consumer credit information. Together with the **Fair Debt Collection Practices Act**, the FCRA forms the foundation of consumer rights law in the United States. It was originally passed in 1970, and is enforced by the US Federal Trade Commission, the Consumer Financial Protection Bureau and private litigants.

140.    RICO was enacted by section 901(a) of the **Organized Crime Control Act** of 1970 (Pub.L. 91–452, 84 Stat. 922, enacted October 15, 1970) and is codified at 18 U.S.C. ch. 96 as 18 U.S.C. §§ 1961–1968. G. Robert Blakey, an adviser to the United States Senate Government Operations Committee, drafted the law under the close supervision of the committee's chairman, Senator John Little McClellan. It was enacted as Title IX of the **Organized Crime Control Act of 1970** and signed into law by Richard M. Nixon. While its original use in the 1970s was to prosecute the Mafia as well as others who were actively engaged in organized crime, its later application has been more widespread.

## XX.   CONCLUSION

WHEREFORE, Plaintiff SKLAROV hereby demands this court to invoke this Judge's Oath and Duty as envisioned by our Founding Fathers. The illegal sale of Property should be reversed and remanded back to the Plaintiff or in the alternative Defendants should be ordered to reimburse plaintiff for loss of property and the revenue expected from the property. Being that irrefutable evidence has been produced before this Court of operating with fraudulent actions and misrepresentations thus violating this Plaintiff's right to a fair and impartial trial and based upon this extrinsic fraud the eviction should not have occurred. Defendants should be ordered to compensate Plaintiff for general, compensatory, punitive damages, and for all further relief this Court deems just.

### JURY TRIAL DEMANDED

Chicago, Illinois
April 18, 2019

Respectfully submitted,

_____
Val Sklarov
One Atlantic Center
1201 Peachtree Avenue
Suite 2300
Atlanta, GA 30309

### Verification by Certification

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to the matters therein stated to be on information and belief and as to such matters the undersigned certifies aforesaid that he verily believes the same to be true.

_____
Val Sklarov

24

# EXHIBIT A

RECORDATION REQUESTED BY:
  FIRST BANK OF HIGHLAND PARK
  1835 FIRST ST
  HIGHLAND PARK, IL  60035

WHEN RECORDED MAIL TO:
  First Bank of Highland Park
  Attn:  Loan Operations
  633 Skokie Blvd, Suite 320
  Northbrook, IL  60062

Image# 041986210013 Type: MTG
Recorded: 08/13/2007 at 01:23:41 PM
Receipt#: 2007-00038189
Total Amt: $48.00 Page 1 of 13
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder

File **6226649**

---

**FOR RECORDER'S USE ONLY**

---

This Mortgage prepared by:      FIRST BANK OF HIGHLAND PARK
                                1835 FIRST STREET
                                HIGHLAND PARK, IL 60035

---

## MORTGAGE

**MAXIMUM LIEN.**  At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $3,860,000.00.

THIS MORTGAGE dated August 10, 2007, is made and executed between VAL SKLAROV, whose address is 221 S. RIDGE , LAKE FOREST, IL  60045 (referred to below as "Grantor") and FIRST BANK OF HIGHLAND PARK, whose address is 1835 FIRST ST, HIGHLAND PARK, IL  60035 (referred to below as "Lender").

**GRANT OF MORTGAGE.  For valuable consideration, Grantor** mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in LAKE County, State of Illinois:

  LOT 542 IN FOX GLEN UNIT FOUR BEING A RESUBDIVISION OF PARTS OF FOX GLEN UNIT ONE SUBDIVISION, A SUBDIVISION OF PART OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 8 AND A RESUBDIVISION OF ALL OF LOT 2 IN BLOCK 257 AND LOT 11 IN BLOCK 256 IN ROUND LAKE BEACH, INDIAN HILLS ADDITION, BEING A SUBDIVISION OF THE WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION 17 AND OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SECTION 18. ALL IN TOWNSHIP 45 NORTH, RANGE 10 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED MAY 31, 2001 AS DOCUMENT 4697504 IN LAKE COUNTY, ILLINOIS.

The Real Property or its address is commonly known as  680 HURON HILLS TRAIL, ROUND LAKE HEIGHTS, IL  60073.  The Real Property tax identification number is 06-08-306-080.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS

668

**MORTGAGE**
**(Continued)**

AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STATUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any

**MORTGAGE**
**(Continued)**

such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a

Case: 1:19-cv-02739 Document #: 7 Filed: 04/23/19 Page 29 of 71 PageID #:103

lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $10,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's

interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**MORTGAGE**
**(Continued)**

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this

paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment

**MORTGAGE**
**(Continued)**

of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the

Loan No: 2424

**MORTGAGE**
**(Continued)**

Page 9

appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of

Loan No: 2424

**MORTGAGE**
**(Continued)**

Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of LAKE County, State of Illinois.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of

677

**MORTGAGE**
**(Continued)**

forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means VAL SKLAROV and SHARON SKLAROV and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means VAL SKLAROV.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means FIRST BANK OF HIGHLAND PARK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated August 10, 2007, **in the original principal amount of $2,557,100.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of,

Loan No: 2424

**MORTGAGE**
**(Continued)**

Page 12

refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is 6.250%.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
VAL SKLAROV

Loan No: 2424

**MORTGAGE**
**(Continued)**

Page 13

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Illinois_ )
                                                      ) SS
COUNTY OF _Lake_ )

On this day before me, the undersigned Notary Public, personally appeared **VAL SKLAROV**, to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _____ 16th _____ day of _August_ , 20 _07_

By _____ Donald C Lavin _____     Residing at _____

Notary Public in and for the State of _Illinois_

My commission expires _6/28/2010_

OFFICIAL SEAL
DONALD S LAVIN
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 06/28/10

682

# EXHIBIT B

RECORDATION REQUESTED BY:
FIRST BANK OF HIGHLAND
PARK
1835 FIRST ST
HIGHLAND PARK, IL 60035

WHEN RECORDED MAIL TO:
First Bank of Highland Park
Attn: Loan Operations
633 Skokie Blvd, Suite 320
Northbrook, IL 60062

Image# 042265450006 Type: MTA
Recorded: 10/09/2007 at 09:12:46 AM
Receipt#: 2007-00048308
Total Amt: $41.00 Page 1 of 6
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 6252833

FOR RECORDER'S USE ONLY

This Modification of Mortgage prepared by:
FIRST BANK OF HIGHLAND PARK
1835 FIRST ST
HIGHLAND PARK, IL 60035

## MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE dated October 2, 2007, is made and executed between VAL SKLAROV, whose address is 221 S. RIDGE , LAKE FOREST, IL 60045 (referred to below as "Grantor") and FIRST BANK OF HIGHLAND PARK, whose address is 1835 FIRST ST, HIGHLAND PARK, IL 60035 (referred to below as "Lender").

MORTGAGE. Lender and Grantor have entered into a Mortgage dated August 10, 2007 (the "Mortgage") which has been recorded in LAKE County, State of Illinois, as follows:

**Recorded August 13, 2007 as Document No. 6226649.**

REAL PROPERTY DESCRIPTION. The Mortgage covers the following described real property located in LAKE County, State of Illinois:

LOT 542 IN FOX GLEN UNIT FOUR BEING A RESUBDIVISION OF PARTS OF FOX GLEN UNIT ONE SUBDIVISION, A SUBDIVISION OF PART OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 8 AND A RESUBDIVISION OF ALL OF LOT 2 IN BLOCK 257 AND LOT 11 IN BLOCK 256 IN ROUND LAKE BEACH, INDIAN HILLS ADDITION, BEING A SUBDIVISION OF THE WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION 17 AND OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SECTION 18, ALL IN TOWNSHIP 45 NORTH, RANGE 10 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED MAY 31, 2001 AS DOCUMENT 4697504 IN LAKE COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 680 HURON HILLS TRAIL, ROUND LAKE HEIGHTS, IL 60073. The Real Property tax identification number is 06-08-306-080.

MODIFICATION. Lender and Grantor hereby modify the Mortgage as follows:

**Increase Principal Amount from $2,557,100.00 to $4,187,000.00**

Increase Maximum Lien from $3,836,000.00 to $6,280,500.00

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Mortgage shall remain

694

unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED OCTOBER 2, 2007.

GRANTOR:

X _____
   VAL SKLAROV

LENDER:

FIRST BANK OF HIGHLAND PARK

X _____
   Authorized Signer

Loan No: 2424

MODIFICATION OF MORTGAGE
(Continued)

Page 3

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Illinois_ )
                               ) SS
COUNTY OF _Lake_ )

On this day before me, the undersigned Notary Public, personally appeared VAL SKLAROV, to me known to be the individual described in and who executed the Modification of Mortgage, and acknowledged that he or she signed the Modification as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _4 TH_ day of _October_ , 20 _07_

By _____                          Residing at _Highland Park, Ill._

Notary Public in and for the State of _Illinois_

My commission expires _6/28/2010_

OFFICIAL SEAL
DONALD S LAVIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/30/10

696

Loan No: 2424

MODIFICATION OF MORTGAGE
(Continued)

Page 4

## LENDER ACKNOWLEDGMENT

STATE OF _____ _I/linois_ _____ )

COUNTY OF _____ _Cook_ _____ ) SS
                                )

> "OFFICIAL SEAL"
> PATRICIA MATA
> Notary Public, State of Illinois
> My Commission Expires 04/17/10

On this ___2nd___ day of ___October___, ___2007___ before me, the undersigned Notary
Public, personally appeared _Terese Sikurster_ and known to me to be the _Asst Vice President_
_____, authorized agent for **FIRST BANK OF HIGHLAND PARK** that executed the within and foregoing
instrument and acknowledged said instrument to be the free and voluntary act and deed of **FIRST BANK OF
HIGHLAND PARK,** duly authorized by **FIRST BANK OF HIGHLAND PARK** through its board of directors or
otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to
execute this said instrument and in fact executed this said instrument on behalf of **FIRST BANK OF HIGHLAND
PARK.**

By _____     Residing at ___Northbrook IL___

Notary Public in and for the State of ___IL___

My commission expires _____ 10

> MIVAJ S OJAY/O
> STATE OF ILLINOIS
> MY COMMISSION EXPIRES

697

## EXHIBIT A

LOT 47 IN LAKEVIEW ESTATES SUBDIVISION, BEING A SUBDIVISION OF PART OF THE NORTHWEST ¼ OF THE SOUTHEAST ¼ OF SECTION 21, TOWNSHIP 45 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED NOVEMBER 17, 1982, AS DOCUMENT 3243746 AND CORRECTED BY CERTIFICATE OF CORRECTION RECORDED AS DOCUMENT 3313583, IN LAKE COUNTY, ILLINOIS.

Commonly known as 870 Waterview Drive, Round Lake Park, Illinois
PIN 06-21420-009

_____

THAT PART OF VACATED GARRICK AVENUE IN FREDERICK H. BARTLETT'S FIRST ADDITION TO NORTH SHORE COUNTRY CLUB ADDITION, BEING A SUBDIVISION OF PART OF SECTION 7, TOWNSHIP 45 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS LYING BETWEEN THE EAST LINE OF LOT 1 IN BLOCK 38, AND THE WEST LINE OF LOT 3 IN BLOCK 31, IN SAID SUBDIVISION, VACATED BY ORDINANCE RECORDED JULY 31, 1981 AS DOCUMENT 2124266, IN LAKE COUNTY, ILLINOIS.

Commonly known as 3047 W. Burris Avenue, Waukegan, IL
PIN 08-07-129-016

_____

LOT 69 IN CLEARVIEW GARDENS UNIT TWO, BEING A SUBDIVISION OF PART OF THE NORTHWEST ¼ OF THE NORTH EAST ¼ OF SECTION 18, TOWNSHIP 45 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JANUARY 25, 1996 AS DOCUENT 3776354, IN LAKE COUNTY, ILLINOIS.

Commonly known as 2807 W. Keith Ave., Waukegan, IL
PIN 08-18-209-030

_____

LOT 77, 78 & 79, BOTH INCLUSIVE, IN CRESCENT MEADOWS PHASE III, BEING A SUBDIVISION OF OUTLOT 1 IN CRESCENT MEADOWS PHASE TWO, A SUBDIVISION OF PART OF THE SOUTHEAST ¼ OF SECTION 13, TOWNSHIP 45 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED MARCH 22, 1993 AS DOCUMENT 3302653, IN LAKE COUNTY, ILLINOIS.

Commonly known as: 990/996 Crestville Court, Gurnee, Illinois (Lot 77)
              PIN 07-13-426-045
              967/982 Crestville Court, Gurnee, Illinois (Lot 78)
              PIN 07-13-426-046
              976/982 Crestville Court, Gurnee, Illinois (Lot 79)
              PIN 07-13-426-047

_____

LOT 74 IN CRESCENT MEADOWS, PHASE TWO, BEING A SUBDIVISION OF PART OF THE SOUTH EAST ¼ OF SECTION 13, TOWNSHIP 45 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, AND PART OF CRESCENT MEADOWS SUBDIVISION RECORDED AS DOCUMENT 2438346, ACCORDING TO THE PLAT OF SAID CRESCENT MEADOWS PHASE TWO RECORDED JUNE 2, 1987 AS DOCUMENT 2573692, IN LAKE COUNTY, ILLINOIS.

Commonly known as 3448/3450 Grandville, Gurnee, Illinois
PIN 07-13-426-033

_____

LOT 477 IN COUNTRY WALK UNIT 7, BEING A SUBDIVISION IN THE WEST HALF OF SECTION 9, TOWNSHIP 45 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED MARCH 12, 1993 AS DOCUMENT 3298830, IN LAKE COUNTY, ILLINOIS.

Commonly known as 2323 N. Harvest Hill, Round Lake Beach, Illinois
PIN 06-09-308-022

---

LOT 685 IN COUNTRY WALK UNIT 10, BEING A SUBDIVISION IN THE WEST ½ OF SECTION 9, TOWNSHIP 45 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 7, 1954, AS DOCUMENT 820686, IN BOOK 32 OF PLATS, PAGES 98, IN LAKE COUNTY, ILLINOIS.

Commonly known as 154 Wildflower Lane, Round Lake Beach, Illinois
PIN 06-09-102-044

---

LOT 2 IN BLOCK 4 IN LOCH LOMOND, A SUBDIVISION IN PART OF SECTION 24, TOWNHIP 44 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF, RECORDED APRIL 7, 1954, AS DOCUMENT 820686, IN BOOK 32 OF PLATS, PAGES 98, IN LAKE COUNTY, ILLINOIS.

Commonly known as 1162 Lomond Drive, Mundelein, Illinois
PIN 10-24-106-020

---

THE WEST 80 FEET OF THE EAST 160 FEET OF LOT 4 IN BLOCK 12 OF FREDERICK H. BARTLETT'S NORTH SHORE LANDS, A SUBDIVISION IN THE NORTH ¼ OF SECTION 7, TOWNSHIP 45 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED NOVEMBER 3, 1926 AS DOCUMENT 289244, IN BOOK "Q" PAGE 80, IN LAKE COUNTY, ILLINOIS.

Commonly known as 3032 W. Vermont Ave., Waukegan, Illinois
PIN 08-07-116-022

---

LOT 107 IN SILVER OAKS UNIT 3, BEING A SUBDIVISION OF PART OF THE SOUTHEAST ¼ AND THE NORTHEAST ¼ OF SECTION 9, TOWNSHIP 45 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED OCTOBER 21, 1993 AS DOCUMENT 3419222, IN LAKE COUNTY, ILLINOIS

Commonly known as 2546 N. Lancaster Lane, Round Lake Beach, Illinois
PIN 06-09-212-023

# EXHIBIT C

## CLOSING STATEMENT – 680 Huron Hills Trail, RLH, IL

ADDRESS: 680 Huron Hills Trail, Round Lake Heights, IL 60073
SELLER: Val Sklarov
ATTORNEY: Donald S. Lavin, Ltd.
BUYER: Lloyd T. and Amy P. Lam
ATTORNEY: Steve Newland
CLOSING DATE: September 12, 2012    (PIN: 06.08.306.080.0000;)
TITLE CO: Fidelity Ntl.Title No. **059005291**

----

| | SELLERS CREDITS | BUYERS CREDITS |
|---|---|---|
| PURCHASE PRICE | 112,000.00 | |
| EARNEST MONEY | | -0- |
| 1st MORTGAGE PAYOFF - All proceeds | | |
| to First Bank of Highland Park | | 100,761.30 |
| | | |
| REAL ESTATE TAXES: | | |
| 2010 (sold) | | |
| 2011 as of 9/5/12 | | 6,030.67 |
| 2012 based on 2011 taxes at 100% | | 5,391.85 |
| 2012 taxes - 1/1/12 – 9/12/12/12 256 days @$14.73 /day | | 3,771.34 |
| | | |
| SELLER'S TITLE CHARGES - | | |
| Fidelity National Title | | 1,468.00 |
| | | |
| REVENUE STAMPS –State/County | | 168 .00 |
| | | |
| BROKER=S COMMISSION - | | |
| Coldwell Banker - balance | | 5,600.00 |
| | | |
| FRAN COULTER - INSPECTION FEE | | 75.00 |
| FRAN COULTER – WATER BILL | | 95.18 |
| FRAN COULTER - WATER deposit | 100.00 | |
| | | |
| ATTORNEY'S FEES AND COSTS- | | |
| Donald S. Lavin, Ltd. | | 500.00 |
| | | |
| CASH TO BALANCE | | -0- |
| TOTAL | 112,100.00 | 112,100.00 |

APPROVED

C. F Hollins

SETTLEMENT:

To Fran Coulter for making water bill deposit      $100.00
To First Bank of Highland Park      100,761.13



*First Bank of Highland Park*

September 6, 2012

Val Sklarov
Sharon Sklarov
c/o Bentley Real Estate Group
200 E. Howard, Suite 296
Des Plaines, IL 60018-5910

Re: Our Loan No. 2424

Dear Borrower:

This letter is in reference to the closing on the property commonly known as 680 Huron Trails, Round Lake Heights, IL 60073. First Bank of Highland Park agrees to release its interest on this property, upon our receipt of 100% of the net sales proceeds, which in no event are to be less than $99,000.00. A $150.00 release fee, payable to First Bank of Highland Park, should be included in the proceeds. If you have any questions please feel free to contact Patrick F. Stallone at (847) 272-1300 X8960. This payoff request is valid through September 20, 2012.

Funds may be delivered to First Bank of Highland Park, 633 Skokie Blvd Suite 320, Northbrook, IL 60062. Attn: Loan Operations or wired to:

> First Bank of Highland Park
> ABA 071922609
> Reference loan #2424
> Attn: Loan Operations

Thank you very much for your assistance in this matter.

Very truly yours,

Joseph K. Kreisel
Vice President / Special Assets Manager

## CLOSING STATEMENT – 680 Huron Hills Trail, RLH, IL

ADDRESS:      680 Huron Hills Trail, Round Lake Heights, IL 60073
SELLER:       Val Sklarov
ATTORNEY:     Donald S. Lavin, Ltd.
BUYER:        Lloyd T. and Amy P. Lam
ATTORNEY:     Steve Newland
CLOSING DATE: September 12, 2012     (PIN: 06.08.306.080.0000;)
TITLE CO: Fidelity Ntl.Title No. **059005291**

--------------------------------------------------------------------------------

|  | SELLERS CREDITS | BUYERS CREDITS |
|---|---|---|
| PURCHASE PRICE | 112,000.00 |  |
| EARNEST MONEY |  | -0- |
| 1st MORTGAGE PAYOFF - All proceeds to First Bank of Highland Park |  | 100,761.30 |
| REAL ESTATE TAXES: |  |  |
| 2010 (sold) |  | 6,030.67 |
| 2011 as of 9/5/12 |  | 5,391.85 |
| 2012 based on 2011 taxes at 100% |  |  |
| 2012 taxes - 1/1/12 – 9/12/12/12 256 days @$14.73 /day |  | 3,771.34 |
| SELLER'S TITLE CHARGES - Fidelity National Title |  | 1,468.00 |
| REVENUE STAMPS –State/County |  | 168 .00 |
| BROKER=S COMMISSION - Coldwell Banker - balance |  | 5,600.00 |
| FRAN COULTER - INSPECTION FEE |  | 75.00 |
| FRAN COULTER – WATER BILL |  | 95.18 |
| FRAN COULTER - WATER deposit | 100.00 |  |
| ATTORNEY'S FEES AND COSTS- Donald S. Lavin, Ltd. |  | 500.00 |
| CASH TO BALANCE |  | -0- |
| TOTAL | 112,100.00 | 112,100.00 |

APPROVED

_____

SETTLEMENT:

| | |
|---|---|
| To Fran Coulter for making water bill deposit | $100.00 |
| To First Bank of Highland Park | 100.761.13 |

AUG-28-2012  10:12AM  FROM-COLDWELL BANKER HIGHLAND PARK  U  8474337266  T-105  P.001/002  F-742

10-AUG-2012  11:21  FROM-COLDWELL BANKER  8474330808  T-281  P.001/015  F-

08/09/2012 22:56  FAX 8478311657  FRAN-IRA.COM

 **MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 5.0** 

1 **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

2 Buyer(s) (Please Print) Lloyd and Amy Lane

3 Seller(s) (Please Print) Val Sidarov

4 If Dual Agency applies, complete Optional Paragraph 31.

5 **2. THE REAL ESTATE:** Real Estate shall be defined as the Property, all improvements, the fixtures and
6 Personal Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the
7 Real Estate with the approximate lot size or acreage of 40012 _____ commonly known as

8 Address
9 580 Huron Hills Trail Round Lake Heights, Illinois 60073

| | City | State | Zip |

10 Lake  0505308082069
11 County  Unit # (if applicable)  Permanent Index Number(s) of Real Estate

12 If Condo/Coop/Townhome Parking is Included: # of space(s) _____; Identified as Space(s) #_____
13 (check type) ☐ deeded space ☐ limited common element ☐ assigned space.

14 **3. FIXTURES AND PERSONAL PROPERTY:** All of the fixtures and included Personal Property are owned by
15 Seller and to Seller's knowledge are in operating condition on the Date of Acceptance, unless otherwise
16 stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing and well systems
17 together with the following items of Personal Property by Bill of Sale at Closing:
18 [Check or enumerate applicable items].

19 ☑ Refrigerator    ☑ Central Air Conditioning   ___ Central Humidifier      ☑ Light Fixtures, as they exist
20 ___ Oven/Range/Stove ___ Window Air Conditioners ___ Water Softener (owned)    ☑ Built-in or Attached Shelving
21 ___ Microwave     ☑ Ceiling Fan(s)       ☑ Sump Pumps           ☑ All Window Treatments & Hardware
22 ☑ Dishwasher     ___ Intercom System      ___ Electronic or Media Air Filter ☑ Existing Storms & Screens
23 ☑ Garbage Disposal  ___ TV Antenna System     ___ Central Vac & Equipment   ___ Fireplace Screen/Door/Grate
24 ___ Trash Compactor  ___ Satellite Dish       ___ Security Systems (owned)   ___ Fireplace Gas Logs
25 ___ Washer      ___ Outdoor Shed       ☑ Garage Door Openers      ___ Invisible Fence System, Collars & Box
26 ___ Dryer       ☑ Planted Vegetation     with all Transmitters       ☑ Smoke Detectors
27 ☑ Attached Gas Grill ___ Outdoor Playsets     ☑ All Tacked Down Carpeting ☑ Carbon Monoxide Detectors
28 Other items included: N/A
29 Items NOT included: N/A
30 Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
31 operating condition at Possession, except N/A
32 A system or item shall be deemed to be in operating condition if it performs the function for which it is
33 intended, regardless of age, and does not constitute a threat to health or safety.
34 Home Warranty ☐ shall ☑ shall not be included at a Premium not to exceed $ XXX

35 **4. PURCHASE PRICE:** Purchase Price of $ 129,000.00  ($12,000) LL AL (VS) ___ shall be paid as follows: Initial earnest money
36 of $ XXX _____ by ☑ check ☐ cash OK ☐ note due on _____, 20 ___ to be increased
37 to a total of $ 1,000.00 _____ by Upon acceptance by bank, 20 ___. The earnest money shall be held by the
38 (check one) ☑ Seller's Broker ☐ Buyer's Broker as "Escrowee", in trust for the mutual benefit of the Parties.
39 The balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing by wire transfer of

| Buyer Initial _____ | Buyer Initial _____ | Seller Initial _____ | Seller Initial _____ |

Address 580 Huron Hills Trail Round Lake Heights, Illinois 60073   v5.0x

1

40 funds, or by certified, cashier's, mortgage lender's or title company's check (provided that the title company's
41 check is guaranteed by a licensed title insurance company).

42 **5. CLOSING:** Closing or escrow payout shall be on 30 days after bank approval, 20___ or at such time as mutually
43 agreed by the Parties in writing. Closing shall take place at the escrow office of the title company (or its
44 issuing agent) that will issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall
45 be agreed mutually by the Parties.

46 **6. POSSESSION:** Unless otherwise provided in Paragraph 39, Seller shall deliver possession to Buyer at the
47 time of Closing. Possession shall be deemed to have been delivered when Seller has vacated the Real Estate
48 and delivered keys to the Real Estate to Buyer or to the office of the Seller's Broker.

49 **7. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer [check one] ☐ has ☒ has
50 not received a completed Illinois Residential Real Property Disclosure Report; [check one] ☒ has ☐ has not
51 received the EPA Pamphlet, "Protect Your Family From Lead in Your Home"; [check one] ☐ has ☒ has not
52 received a Lead-Based Paint Disclosure; [check one] ☒ has ☐ has not received the IEMA Pamphlet "Radon
53 Testing Guidelines for Real Estate Transactions"; [check one] ☒ has ☐ has not received the Disclosure of
54 Information on Radon Hazards.

55 **8. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants;
56 Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer;
57 and Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
58 Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
59 represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $ XXX
60 per XXX (and, if applicable, Master/Umbrella Association fees are $ XXX per XXX ). Seller agrees
61 to pay prior to or at Closing any special assessments (by any association or governmental entity) confirmed
62 prior to the Date of Acceptance. Installments due after the year of Closing for a Special Assessment Area or
63 Special Service Area shall not be a proratable item and shall be payable by Buyer. The general Real Estate
64 taxes shall be prorated as of the date of Closing based on 100 % of the most recent ascertainable full year
65 tax bill. All prorations shall be final as of Closing, except as provided in Paragraph 20. If the amount of the
66 most recent ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior
67 freeze or senior deferral, then Seller has submitted or will submit in a timely manner all necessary
68 documentation to the appropriate governmental entity, before or after Closing, to preserve said exemption(s).

69 **9. ATTORNEY REVIEW:** Within five (5) Business Days after the Date of Acceptance, the attorneys for the
70 respective Parties, by Notice, may: ⌐ BY LENDER
71 (a) Approve this Contract; or
72 (b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
73 (c) Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
74    Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
75    modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
76    shall be null and void; or
77 (d) Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
78    declare this Contract null and void and this Contract shall remain in full force and effect.
79 **Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 9(c). If Notice is not**
80 **served within the time specified herein, the provisions of this paragraph shall be deemed waived by the**
81 **Parties and this Contract shall remain in full force and effect.**

| Buyer Initial ___LL___ | Buyer Initial ___AL___ | Seller Initial _____ | Seller Initial _____ |
| --- | --- | --- | --- |
| Address 680 Huron Hills Trail Round Lake Heights, Illinois 60073 | | | v5.0e |

2

40 funds, or by certified, cashier's, mortgage lender's or title company's check (provided that the title company's
41 check is guaranteed by a licensed title insurance company).

42 **5. CLOSING:** Closing or escrow payout shall be on 30 days after bank approval, 20 ___ or at such time as mutually
43 agreed by the Parties in writing. Closing shall take place at the escrow office of the title company (or its
44 issuing agent) that will issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall
45 be agreed mutually by the Parties.

46 **6. POSSESSION:** Unless otherwise provided in Paragraph 39, Seller shall deliver possession to Buyer at the
47 time of Closing. Possession shall be deemed to have been delivered when Seller has vacated the Real Estate
48 and delivered keys to the Real Estate to Buyer or to the office of the Seller's Broker.

49 **7. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer *[check one]* ☐ has ☑ has
50 not received a completed Illinois Residential Real Property Disclosure Report; *[check one]* ☑ has ☐ has not
51 received the EPA Pamphlet "Protect Your Family From Lead in Your Home"; *[check one]* ☐ has ☑ has not
52 received a Lead-Based Paint Disclosure; *[check one]* ☑ has ☐ has not received the IEMA Pamphlet "Radon
53 Testing Guidelines for Real Estate Transactions"; *[check one]* ☑ has ☐ has not received the Disclosure of
54 Information on Radon Hazards.

55 **8. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants;
56 Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer;
57 and Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
58 Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
59 represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $ XXX
60 per XXX (and, if applicable, Master/Umbrella Association fees are $ XXX per XXX ). Seller agrees
61 to pay prior to or at Closing any special assessments (by any association or governmental entity) confirmed
62 prior to the Date of Acceptance. Installments due after the year of Closing for a Special Assessment Area or
63 Special Service Area shall not be a proratable item and shall be payable by Buyer. The general Real Estate
64 taxes shall be prorated as of the date of Closing based on 100 % of the most recent ascertainable full year
65 tax bill. All prorations shall be final as of Closing, except as provided in Paragraph 20. If the amount of the
66 most recent ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior
67 freeze or senior deferral, then Seller has submitted or will submit in a timely manner all necessary
68 documentation to the appropriate governmental entity, before or after Closing, to preserve said exemption(s).

69 **9. ATTORNEY REVIEW:** Within five (5) Business Days after the Date of Acceptance, the attorneys for the
70 respective Parties, by Notice, may:                                                           ᒪBY LENDER
71 (a) Approve this Contract; or                                                                  LL AL
72 (b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or    VS
73 (c) Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
74     Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
75     modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
76     shall be null and void; or
77 (d) Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
78     declare this Contract null and void and this Contract shall remain in full force and effect.
79 Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 9(c). If Notice is not
80 served within the time specified herein, the provisions of this paragraph shall be deemed waived by the
81 Parties and this Contract shall remain in full force and effect.

| Buyer Initial LL | Buyer Initial AL | Seller Initial | Seller Initial |
|---|---|---|---|
| Address **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | v5.0e |

2

# FAX TRANSMITTAL
From The Desk Of:

## Rick Brown

E-Mail: rick.brown@cbexchange.com
Direct: (847)990-3116    Office: (847)362-7300
Cell: (847)400-6018

DATE: *8-3-12*    FAX#: _____

TO: *FRAN COULTER*

RE: *680 Huron Hills Trail*

Number of Pages Including Cover: *14*

# COLDWELL BANKER
Residential Brokerage
1133 S. Milwaukee Ave.
Libertyville, IL 60048
To Reply: **Fax #: (847) 415-6829**

*Cash offer to Purchase*
*Proof of Funds.*

*NEED Disclosures*





### Discover Online Savings
### Account Statement
June 30, 2012 to July 31, 2012

AMY P LAM
OR LLOYD T LAM
1132 SUSSEX LN
LIBERTYVILLE IL 60048-1247

Page 1 of 3

## Summary

Account number

| | | |
|---|---|---|
| Interest rate as of statement date | 0.80% | Beginning balance ........... $ 170,039.57 |
| Annual percentage yield earned | 0.80% | Funds added ............... + 12,514.42 |
| Interest paid year to date | $245.36 | Funds withdrawn ........... − 2,579.55 |
| Days in statement period | 31 | Interest paid this period ....... + 116.41 |
| Average daily balance | $171,278.06 | Ending balance ............ $ 180,090.85 |

| | Total For this period | Total Year-to-Date |
|---|---|---|
| **Total Overdraft Fees** | $0.00 | $0.00 |
| **Total Returned Item Fees** | $0.00 | $0.00 |

## Account Activity

| | | | |
|---|---|---|---|
| Jun 30 | ENDING BALANCE | ........... $ | 170,039.57 |
| Jul 12 | DISCOVER BANK ETRANSFER AMY LAM | − | 500.00 |
| Jul 17 | WF HOME MTG AUTO PAY LAM, LLOYD | − | 1,579.55 |
| Jul 26 | CUSTOMER DEPOSIT | + | 12,514.42 |
| Jul 26 | DISCOVER BANK ETRANSFER AMY LAM | − | 500.00 |
| Jul 31 | INTEREST PAID | + | 116.41 |
| Jul 31 | ENDING BALANCE | ........... $ | 180,090.85 |

## Announcements

**Questions? Call 1-800-347-7000**
Or write to: Discover Bank, PO Box 30416, Salt Lake City, UT 84130
For TDD (Telecommunications Device for the Deaf) assistance only, please call 1-800-347-7454

® PLEASE DETACH AT DOTTED LINE ABOVE ®

**Deposit Slip** Account number

**AMY P LAM**
**OR LLOYD T LAM**
**1132 SUSSEX LN**
**LIBERTYVILLE IL 60048-1247**

Date

| List checks separately | Dollars | Cents |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Total | $ | |

Do not send cash or staple checks to this form.
Please return in the postage-paid envelope
provided or mail to : Discover Bank,
PO Box 30417, Salt Lake City, UT 30130

**\*031100649\***  110

 **MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 5.0** 

1 **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

2 Buyer(s) (Please Print) **Lloyd and Amy Lam**

3 Seller(s) (Please Print) **Val Sidarov**

4 If Dual Agency applies, complete Optional Paragraph 41.

5 **2. THE REAL ESTATE:** Real Estate shall be defined as the Property, all improvements, the fixtures and
6 Personal Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the
7 Real Estate with the approximate lot size or acreage of **44X15** _____ commonly known as:

8 **680 Huron Hills Trail Round Lake Heights, Illinois 60073**
9 Address                          City                          State                          Zip

10 **Lake**                                        **06083060800000**
11 County                    Unit # (if applicable)              Permanent Index Number(s) of Real Estate

12 If Condo/Coop/Townhome Parking is Included: # of space(s) ____; identified as Space(s) #_____;
13 *(check type)* ❑ deeded space ❑ limited common element ❑ assigned space.

14 **3. FIXTURES AND PERSONAL PROPERTY:** All of the fixtures and included Personal Property are owned by
15 Seller and to Seller's knowledge are in operating condition on the Date of Acceptance, unless otherwise
16 stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing and well systems
17 together with the following items of Personal Property by Bill of Sale at Closing:
18 *[Check or enumerate applicable items]*

19 ✓ Refrigerator    ✓ Central Air Conditioning    __ Central Humidifier    ✓ Light Fixtures, as they exist
20 __ Oven/Range/Stove   __ Window Air Conditioners   __ Water Softener (owned)   ✓ Built-in or Attached Shelving
21 __ Microwave    ✓ Ceiling Fan(s)    ✓ Sump Pumps    ✓ All Window Treatments & Hardware
22 ✓ Dishwasher    __ Intercom System    __ Electronic or Media Air Filter   ✓ Existing Storms & Screens
23 ✓ Garbage Disposal   __ TV Antenna System   __ Central Vac & Equipment   __ Fireplace Screens/Doors/Grates
24 __ Trash Compactor   __ Satellite Dish   __ Security Systems (owned)   __ Fireplace Gas Logs
25 __ Washer    __ Outdoor Shed    ✓ Garage Door Openers   __ Invisible Fence System, Collars & Box
26 __ Dryer    ✓ Planted Vegetation    with all Transmitters   ✓ Smoke Detectors
27 ✓ Attached Gas Grill   __ Outdoor Playsets   ✓ All Tacked Down Carpeting   ✓ Carbon Monoxide Detectors
28 Other items included: **N/A**
29 Items NOT included: **N/A**

30 Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
31 operating condition at Possession, except: **N/A**
32 A system or item shall be deemed to be in operating condition if it performs the function for which it is
33 intended, regardless of age, and does not constitute a threat to health or safety.
34 Home Warranty ❑ shall ☑ shall not be included at a Premium not to exceed $ **XXX** _____.

35 **4. PURCHASE PRICE:** Purchase Price of $ **120,000.00** _____ shall be paid as follows: Initial earnest money
36 of $ **XXX** _____ by ☑ check, ❑ cash OR ❑ note due on _____ , 20___ to be increased
37 to a total of $ **1,000.00** _____ by **Upon acceptance by bank** , 20___. The earnest money shall be held by the
38 *[check one]* ☑ Seller's Broker ❑ Buyer's Broker as "Escrowee", in trust for the mutual benefit of the Parties.
39 The balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing by wire transfer of

| Buyer Initial    LL | Buyer Initial    AL | Seller Initial _____ | Seller Initial _____ |
|---|---|---|---|

Address **680 Huron Hills Trail Round Lake Heights, Illinois 60073**      v5.0e

1

40 funds, or by certified, cashier's, mortgage lender's or title company's check (provided that the title company's
41 check is guaranteed by a licensed title insurance company).

42 **5. CLOSING:** Closing or escrow payout shall be on **30 days after bank approval**, 20____ or at such time as mutually
43 agreed by the Parties in writing. Closing shall take place at the escrow office of the title company (or its
44 issuing agent) that will issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall
45 be agreed mutually by the Parties.

46 **6. POSSESSION:** Unless otherwise provided in Paragraph 39, Seller shall deliver possession to Buyer at the
47 time of Closing. Possession shall be deemed to have been delivered when Seller has vacated the Real Estate
48 and delivered keys to the Real Estate to Buyer or to the office of the Seller's Broker.

49 **7. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer *[check one]* ☐ has ☑ has
50 not received a completed Illinois Residential Real Property Disclosure Report; *[check one]* ☑ has ☐ has not
51 received the EPA Pamphlet, "Protect Your Family From Lead in Your Home"; *[check one]* ☐ has ☑ has not
52 received a Lead-Based Paint Disclosure; *[check one]* ☑ has ☐ has not received the IEMA Pamphlet "Radon
53 Testing Guidelines for Real Estate Transactions"; *[check one]* ☑ has ☐ has not received the Disclosure of
54 Information on Radon Hazards.

55 **8. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants;
56 Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer;
57 and Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
58 Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
59 represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $ **XXX**
60 per **XXX** (and, if applicable, Master/Umbrella Association fees are $ **XXX** per **XXX** ). Seller agrees
61 to pay prior to or at Closing any special assessments (by any association or governmental entity) confirmed
62 prior to the Date of Acceptance. Installments due after the year of Closing for a Special Assessment Area or
63 Special Service Area shall not be a proratable item and shall be payable by Buyer. The general Real Estate
64 taxes shall be prorated as of the date of Closing based on **100**____% of the most recent ascertainable full year
65 tax bill. All prorations shall be final as of Closing, except as provided in Paragraph 20. If the amount of the
66 most recent ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior
67 freeze or senior deferral, then Seller has submitted or will submit in a timely manner all necessary
68 documentation to the appropriate governmental entity, before or after Closing, to preserve said exemption(s).

69 **9. ATTORNEY REVIEW:** Within five (5) Business Days after the Date of Acceptance, the attorneys for the
70 respective Parties, by Notice, may:  ᒪBY LENDER
71 (a) Approve this Contract; or  LL AL
72 (b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
73 (c) Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
74      Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
75      modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
76      shall be null and void; or
77 (d) Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
78      declare this Contract null and void and this Contract shall remain in full force and effect.
79 Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 9(c). If Notice is not
80 **served within the time specified herein, the provisions of this paragraph shall be deemed waived by the**
81 **Parties and this Contract shall remain in full force and effect.**

| *Buyer Initial* LL | *Buyer Initial* AL | *Seller Initial* | *Seller Initial* |
|---|---|---|---|
| *Address* **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | v5.0e |

2

82 **10. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** Buyer may conduct at Buyer's expense
83 (unless otherwise provided by governmental regulations) a home, radon, environmental, lead-based paint
84 and/or lead-based paint hazards (unless separately waived), and/or wood destroying insect infestation
85 inspection of the Real Estate by one or more licensed or certified inspection service(s).

86 (a) Buyer agrees that minor repairs and routine maintenance items of the Real Estate do not constitute
87     defects and are not a part of this contingency. **The fact that a functioning major component may be at**
88     **the end of its useful life shall not render such component defective for purposes of this paragraph.**
89     Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage caused by the
90     acts or negligence of Buyer or any person performing any inspection. The home inspection shall cover
91     only the major components of the Real Estate, including but not limited to central heating system(s),
92     central cooling system(s), plumbing and well system, electrical system, roof, walls, windows, ceilings,
93     floors, appliances and foundation. A major component shall be deemed to be in operating condition if it
94     performs the function for which it is intended, regardless of age, and does not constitute a threat to health
95     or safety. If radon mitigation is performed, Seller shall pay for any retest.

96 (b) Buyer shall serve Notice upon Seller or Seller's attorney of any defects disclosed by any inspection for
97     which Buyer requests resolution by Seller, together with a copy of the pertinent pages of the inspection
98     reports within five (5) Business Days (ten (10) calendar days for a lead-based paint and/or lead-based
99     paint hazard inspection) after the Date of Acceptance. If within ten (10) Business Days after the Date of
100    Acceptance written agreement is not reached by the Parties with respect to resolution of all inspection
101    issues, then either Party may terminate this Contract by serving Notice to the other Party, whereupon this
102    Contract shall be null and void.     L *BY LENDER*L L  ▲L

103 (c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
104    reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller
105    within five (5) Business Days after the Date of Acceptance, this Contract shall be null and void.

106 (d) Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a
107    waiver of Buyer's right to terminate this Contract under this Paragraph 10 and this Contract shall remain
108    in full force and effect.

109 **11. MORTGAGE CONTINGENCY:** This Contract is contingent upon Buyer obtaining a firm written mortgage
110 commitment (except for matters of title and survey or matters totally within Buyer's control) on or before
111 **CASH**_____, 20____ for a *[check one]* ❑ fixed ❑ adjustable; *[check one]* ❑ conventional ❑ FHA/VA
112 (if FHA/VA is chosen, complete Paragraph 35) ☑ other **CASH**_____ loan of **XXX** % of Purchase
113 Price, plus private mortgage insurance (PMI), if required. The interest rate (initial rate, if applicable) shall not
114 exceed **XXX** % per annum, amortized over not less than **XXX** years. Buyer shall pay loan origination fee
115 and/or discount points not to exceed **XXX** % of the loan amount. Buyer shall pay the cost of application,
116 usual and customary processing fees and closing costs charged by lender. (Complete Paragraph 33 if closing
117 cost credits apply.) Buyer shall make written loan application within five (5) Business Days after the Date of
118 Acceptance. **Failure to do so shall constitute an act of Default under this Contract. If Buyer, having applied**
119 **for the loan specified above, is unable to obtain such loan commitment and serves Notice to Seller within**
120 **the time specified, this Contract shall be null and void. If Notice of inability to obtain such loan**
121 **commitment is not served within the time specified, Buyer shall be deemed to have waived this**
122 **contingency and this Contract shall remain in full force and effect. Unless otherwise provided in**
123 **Paragraph 31, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing real**
124 estate. Buyer shall be deemed to have satisfied the financing conditions of this paragraph if Buyer obtains a
125 loan commitment in accordance with the terms of this paragraph even though the loan is conditioned on the
126 sale and/or closing of Buyer's existing real estate. If Seller at Seller's option and expense, within thirty (30)
127 days after Buyer's Notice, procures for Buyer such commitment or notifies Buyer that Seller will accept a

| *Buyer Initial*    LL | *Buyer Initial*    ▲L | *Seller Initial* _____ | *Seller Initial* _____ |
|---|---|---|---|
| *Address* **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | v5.0e |

3

713

128 purchase money mortgage upon the same terms, this Contract shall remain in full force and effect. In such
129 event, Seller shall notify Buyer within five (5) Business Days after Buyer's Notice of Seller's election to
130 provide or obtain such financing, and Buyer shall furnish to Seller or lender all requested information and
131 shall sign all papers necessary to obtain the mortgage commitment and to close the loan.

132 **12. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for
133 an Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10)
134 Business Days after the Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves**
135 **Notice with proof of same to Seller within the time specified, this Contract shall be null and void. If**
136 **Notice is not served within the time specified, Buyer shall be deemed to have waived this contingency**
137 **and this Contract shall remain in full force and effect.**

138 **13. FLOOD INSURANCE:** Unless previously disclosed in the Illinois Residential Real Property Disclosure
139 Report, Buyer shall have the option to declare this Contract null and void if the Real Estate is located in a
140 special flood hazard area which requires Buyer to carry flood insurance. **If Notice of the option to declare**
141 **this Contract null and void is not given to Seller within ten (10) Business Days after the Date of**
142 **Acceptance or by the Mortgage Contingency deadline date described in Paragraph 11 (whichever is later),**
143 **Buyer shall be deemed to have waived such option and this Contract shall remain in full force and effect.**
144 Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property Disclosure Act.

145 **14. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** (If applicable) The Parties agree that the terms
146 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any
147 conflicting terms.

148 (a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and
149     conditions of the Declaration of Condominium/Covenants, Conditions and Restrictions and all
150     amendments; public and utility easements including any easements established by or implied from the
151     Declaration of Condominium/Covenants, Conditions and Restrictions or amendments thereto; party wall
152     rights and agreements; limitations and conditions imposed by the Condominium Property Act;
153     installments due after the date of Closing of general assessments established pursuant to the Declaration
154     of Condominium/Covenants, Conditions and Restrictions.

155 (b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for
156     all special assessments confirmed prior to the Date of Acceptance.

157 (c) Buyer has, within five (5) Business Days from the Date of Acceptance, the right to demand from Seller
158     items as stipulated by the Illinois Condominium Property Act, if applicable, and Seller shall diligently
159     apply for same. This Contract is subject to the condition that Seller be able to procure and provide to
160     Buyer, a release or waiver of any option of first refusal or other pre-emptive rights of purchase created by
161     the Declaration of Condominium/Covenants, Conditions and Restrictions within the time established by
162     the Declaration of Condominium/Covenants, Conditions and Restrictions. In the event the
163     Condominium Association requires the personal appearance of Buyer and/or additional documentation,
164     Buyer agrees to comply with same.

165 (d) In the event the documents and information provided by Seller to Buyer disclose that the existing
166     improvements are in violation of existing rules, regulations or other restrictions or that the terms and
167     conditions contained within the documents would unreasonably restrict Buyer's use of the premises or
168     would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate,
169     then Buyer may declare this Contract null and void by giving Seller Notice within five (5) Business Days
170     after the receipt of the documents and information required by Paragraph 14(c), listing those deficiencies
171     which are unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed
172     to have waived this contingency, and this Contract shall remain in full force and effect.

| Buyer Initial LL | Buyer Initial AL | Seller Initial | Seller Initial | |
|---|---|---|---|---|
| Address **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | | v5.0e |

4

173 (e) Seller shall not be obligated to provide a condominium survey.

174 (f) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

175 **15. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
176 merchantable title to the Real Estate by recordable general Warranty Deed, with release of homestead rights,
177 (or the appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by
178 Seller (unless otherwise designated by local ordinance). Title when conveyed will be good and merchantable,
179 subject only to: general real estate taxes not due and payable at the time of Closing; covenants, conditions
180 and restrictions of record; and building lines and easements, if any, provided they do not interfere with the
181 current use and enjoyment of the Real Estate.

182 **16. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
183 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a
184 title commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended
185 coverage by a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of
186 Acceptance, subject only to items listed in Paragraph 15. The requirement to provide extended coverage shall
187 not apply if the Real Estate is vacant land. The commitment for title insurance furnished by Seller will be
188 conclusive evidence of good and merchantable title as therein shown, subject only to the exceptions therein
189 stated. **If the title commitment discloses any unpermitted exceptions or if the Plat of Survey shows any**
190 **encroachments or other survey matters that are not acceptable to Buyer, then Seller shall have said**
191 **exceptions, survey matters or encroachments removed, or have the title insurer commit to either insure**
192 **against loss or damage that may result from such exceptions or survey matters or insure against any court-**
193 **ordered removal of the encroachments.** If Seller fails to have such exceptions waived or insured over prior to
194 Closing, Buyer may elect to take the title as it then is with the right to deduct from the Purchase Price prior
195 encumbrances of a definite or ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title
196 covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA
197 Insurance Policy.

198 **17. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
199 condominium (see Paragraph 14) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat
200 of Survey that conforms to the current Minimum Standards of Practice for boundary surveys, is dated not
201 more than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor
202 licensed to practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show
203 visible evidence of improvements, rights of way, easements, use and measurements of all parcel lines. The
204 land surveyor shall set monuments or witness corners at all accessible corners of the land. All such corners
205 shall also be visibly staked or flagged. The Plat of Survey shall include the following statement placed near
206 the professional land surveyor seal and signature: "This professional service conforms to the current Illinois
207 Minimum Standards for a boundary survey." A Mortgage Inspection, as defined, is not a boundary survey
208 and is not acceptable.

209 **18. ESCROW CLOSING:** At the election of either Party, not less than five (5) Business Days prior to Closing,
210 this sale shall be closed through an escrow with the lending institution or the title company in accordance
211 with the provisions of the usual form of Deed and Money Escrow Agreement, as agreed upon between the
212 Parties, with provisions inserted in the Escrow Agreement as may be required to conform with this Contract.
213 The cost of the escrow shall be paid by the Party requesting the escrow. If this transaction is a cash purchase
214 (no mortgage is secured by Buyer), the Parties shall share the title company escrow closing fee equally.

215 **19. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the
216 Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by

| Buyer Initial LL | Buyer Initial AL | Seller Initial | Seller Initial |
|---|---|---|---|
| Address 680 Huron Hills Trail Round Lake Heights, Illinois 60073 | | | v5.0e |

5

217 condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
218 earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
219 condemnation award or any insurance payable as a result of the destruction or damage, which gross
220 proceeds Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to
221 repair or replace damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of
222 the State of Illinois shall be applicable to this Contract, except as modified by this paragraph.

223 **20. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed
224 for the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be
225 deposited in escrow with the title company with the cost of the escrow to be divided equally by Buyer and
226 Seller and paid at Closing. When the exact amount of the taxes to be prorated under this Contract can be
227 ascertained, the taxes shall be prorated by Seller's attorney at the request of either Party and Seller's share of
228 such tax liability after proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be
229 paid to Seller. If Seller's obligation after such proration exceeds the amount of the escrow funds, Seller agrees
230 to pay such excess promptly upon demand.

231 **21. SELLER REPRESENTATIONS:** Seller represents that with respect to the Real Estate Seller has no
232 knowledge of nor has Seller received written notice from any governmental body regarding:
233 (a) zoning, building, fire or health code violations that have not been corrected;
234 (b) any pending rezoning;
235 (c) boundary line disputes;
236 (d) any pending condemnation or Eminent Domain proceeding;
237 (e) easements or claims of easements not shown on the public records;
238 (f) any hazardous waste on the Real Estate;
239 (g) any improvements to the Real Estate for which the required permits were not obtained;
240 (h) any improvements to the Real Estate which are not included in full in the determination of the most
241 recent tax assessment; or
242 (i) any improvements to the Real Estate which are eligible for the home improvement tax exemption.

243 Seller further represents that:
244 1. There *[check one]* ☐ is ☑ is not a pending or unconfirmed special assessment affecting the Real Estate by
245 any association or governmental entity payable by Buyer after date of Closing.
246 2. The Real Estate *[check one]* ☐ is ☑ is not located within a Special Assessment Area or Special Service
247 Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
248 **If any of the representations contained herein regarding a Special Assessment Area or Special Service**
249 **Area are unacceptable to Buyer, Buyer shall have the option to declare this Contract null and void. If**
250 **Notice of the option to declare this Contract null and void is not given to Seller within ten (10) Business**
251 **Days after the Date of Acceptance or by the Mortgage Contingency deadline date described in Paragraph**
252 **11 (whichever is later), Buyer shall be deemed to have waived such option and this Contract shall remain**
253 **in full force and effect. Seller's representations contained in this paragraph shall survive the Closing.**

254 **22. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
255 condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the
256 Real Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real
257 Estate, fixtures and included Personal Property prior to Possession to verify that the Real Estate,
258 improvements and included Personal Property are in substantially the same condition as of the Date of
259 Acceptance, normal wear and tear excepted.

| Buyer Initial ___LL___ | Buyer Initial ___AL___ | Seller Initial _____ | Seller Initial _____ | |
|---|---|---|---|---|
| *Address* **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | | v5.0 |

6

716

260 **23. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
261 (a) Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-closing
262 inspection requirement, municipal Transfer Tax or other similar ordinances. Transfer taxes required by
263 municipal ordinance shall be paid by the party designated in such ordinance.
264 (b) Parties agree to comply with the reporting requirements of the applicable sections of the Internal
265 Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

266 **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal
267 holidays. Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.

268 **25. FACSIMILE OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
269 executing, negotiating, and finalizing this Contract.

270 **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
271 Contract may be terminated by either Party, the following shall be deemed incorporated: "and earnest money
272 refunded to Buyer upon written direction of the Parties to Escrowee or upon entry of an order by a court of
273 competent jurisdiction". There shall be no disbursement of earnest money unless Escrowee has been
274 provided written direction from Seller and Buyer. Absent a direction relative to the disbursement of earnest
275 money within a reasonable period of time, Escrowee may deposit funds with the Clerk of the Circuit Court
276 by the filing of an action in the nature of Interpleader. Escrowee shall be reimbursed from the earnest money
277 for all costs, including reasonable attorney fees, related to the filing of the Interpleader action. Seller and
278 Buyer shall indemnify and hold Escrowee harmless from any and all conflicting claims and demands arising
279 under this paragraph.

280 **27. NOTICE:** Except as provided in Paragraph 31(C)(2) regarding the manner of service for "kick-out"
281 Notices, all Notices shall be in writing and shall be served by one Party or attorney to the other Party or
282 attorney. Notice to any one of a multiple person Party shall be sufficient Notice to all. Notice shall be given in
283 the following manner:
284 (a) By personal delivery; or
285 (b) By mailing to the addresses recited herein by regular mail and by certified mail, return receipt requested.
286 Except as otherwise provided herein, Notice served by certified mail shall be effective on the date of
287 mailing; or
288 (c) By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that
289 the Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is
290 transmitted during non-business hours, the effective date and time of Notice is the first hour of the next
291 Business Day after transmission; or
292 (d) By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient
293 Party's attorney to the sending Party or is shown on this Contract. Notice shall be effective as of date and
294 time of e-mail transmission, provided that, in the event e-mail Notice is transmitted during non-business
295 hours, the effective date and time of Notice is the first hour of the next Business Day after transmission.
296 An attorney or Party may opt out of future e-mail Notice by any form of Notice provided by this
297 Contract; or
298 (e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
299 following deposit with the overnight delivery company.

300 **28. PERFORMANCE: Time is of the essence of this Contract.** In any action with respect to this Contract, the
301 Parties are free to pursue any legal remedies at law or in equity and the prevailing Party in litigation shall be
302 entitled to collect reasonable attorney fees and costs from the non-Prevailing Party as ordered by a court of
303 competent jurisdiction.

| Buyer Initial LL | Buyer Initial AL | Seller Initial | Seller Initial |
|---|---|---|---|
| Address **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | v5.0 |

304 **29. CHOICE OF LAW/GOOD FAITH:** All terms and provisions of this Contract including but not limited to the
305 Attorney Review and Professional Inspection Paragraphs shall be governed by the laws of the State of Illinois
306 and are subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

307 **30. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS initialed by the
308 Parties and the following attachments, if any: _____
309 _____.

310 **OPTIONAL PROVISIONS (Applicable ONLY if initialed by all Parties)**

311 _____ **31. SALE OF BUYER'S REAL ESTATE:**
312 [Initials]
313 **(A) REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
314 (1) Buyer owns real estate commonly known as (address):
315 _____
316 (2) Buyer *[check one]* ❑ has ❑ has not entered into a contract to sell said real estate.
317 If Buyer has entered into a contract to sell said real estate, that contract:
318 (a) *[check one]* ❑ is ❑ is not subject to a mortgage contingency.
319 (b) *[check one]* ❑ is ❑ is not subject to a real estate sale contingency.
320 (c) *[check one]* ❑ is ❑ is not subject to a real estate closing contingency.
321 (3) Buyer *[check one]* ❑ has ❑ has not listed said real estate for sale with a licensed real estate broker and
322 in a local multiple listing service.
323 (4) If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple
324 listing service, Buyer *[check one]*
325 (a) ❑ Shall list said real estate for sale with a licensed real estate broker who will place it in a local
326 multiple listing service within five (5) Business Days after the Date of Acceptance.
327 [For information only] Broker: _____
328 Broker's Address: _____ Phone: _____.
329 (b) ❑ Does not intend to list said real estate for sale.
330 **(B) CONTINGENCIES BASED UPON SALE AND/OR CLOSE OF BUYER'S REAL ESTATE:**
331 (1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real
332 estate that is in full force and effect as of _____, 20____. Such contract should provide
333 **for a closing date not later than the Closing Date set forth in this Contract. If Notice is served on or**
334 **before the date set forth in this subparagraph that Buyer has not procured a contract for the sale of**
335 **Buyer's real estate, this Contract shall be null and void. If Notice that Buyer has not procured a**
336 **contract for the sale of Buyer's real estate is not served on or before the close of business on the**
337 **date set forth in this subparagraph, Buyer shall be deemed to have waived all contingencies**
338 **contained in this Paragraph 31, and this Contract shall remain in full force and effect.** (If this
339 paragraph is used, then the following paragraph **must** be completed.)
340 (2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in
341 Paragraph 31(B)(1) and that contract is in full force and effect, or has entered into a contract for the
342 sale of Buyer's real estate prior to the execution of this Contract, this Contract is contingent upon
343 Buyer closing the sale of Buyer's real estate on or before _____, 20____. **If Notice that**
344 **Buyer has not closed the sale of Buyer's real estate is served before the close of business on the**
345 **next Business Day after the date set forth in the preceding sentence, this Contract shall be null and**
346 **void. If Notice is not served as described in the preceding sentence, Buyer shall be deemed to have**
347 **waived all contingencies contained in this Paragraph 31, and this Contract shall remain in full**
348 **force and effect.**

| Buyer Initial | LL | Buyer Initial | AL | Seller Initial | | Seller Initial | |
|---|---|---|---|---|---|---|---|
| Address | 680 Huron Hills Trail Round Lake Heights, Illinois 60073 | | | | | | v5.0 |

349 (3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in
350 Paragraph 31(B)(1) (or after the date of this Contract if no date is set forth in Paragraph 31(B)(1)),
351 Buyer shall, within three (3) Business Days of such termination, notify Seller of said termination.
352 **Unless Buyer, as part of said Notice, waives all contingencies in Paragraph 31 and complies with**
353 **Paragraph 31(D), this Contract shall be null and void as of the date of Notice. If Notice as required**
354 **by this subparagraph is not served within the time specified, Buyer shall be in default under the**
355 **terms of this Contract.**
356 **(C) SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency,
357 Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:
358 (1) If Seller accepts another bona fide offer to purchase the Real Estate while the contingencies expressed
359 in Paragraph 31(B) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have
360 _____ hours after Seller gives such Notice to waive the contingencies set forth in Paragraph
361 31(B), subject to Paragraph 31(D).
362 (2) Seller's Notice to Buyer (commonly referred to as a 'kick-out' Notice) shall be in writing and shall be
363 served on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such "kick-out"
364 Notice should be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide
365 such courtesy copies shall not render Notice invalid. Notice to any one of a multiple person Buyer
366 shall be sufficient Notice to all Buyers. Notice for the purpose of this subparagraph only shall be
367 served upon Buyer in the following manner:
368 (a) By personal delivery effective at the time and date of personal delivery; or
369 (b) By mailing to the addresses recited herein for Buyer by regular mail and by certified mail. Notice
370 shall be effective at 10:00 A.M. on the morning of the second day following deposit of Notice in
371 the U.S. Mail; or
372 (c) By commercial overnight delivery (e.g., FedEx). Notice shall be effective upon delivery or at 4:00
373 P.M. Chicago time on the next delivery day following deposit with the overnight delivery
374 company, whichever first occurs.
375 (3) If Buyer complies with the provisions of Paragraph 31(D) then this Contract shall remain in full force
376 and effect.
377 (4) If the contingencies set forth in Paragraph 31(B) are NOT waived in writing within said time period
378 by Buyer, this Contract shall be null and void.
379 (5) Except as provided in Paragraph 31(C)(2) above, all Notices shall be made in the manner provided by
380 Paragraph 27 of this Contract.
381 (6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney
382 or representative.
383 **(D) WAIVER OF PARAGRAPH 31 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
384 Paragraph 31(B) when Buyer has delivered written waiver and deposited with the Escrowee additional
385 earnest money in the amount of $_____ in the form of a cashier's or certified check within the
386 time specified. **If Buyer fails to deposit the additional earnest money within the time specified, the waiver**
387 **shall be deemed ineffective and this Contract shall be null and void.**
388 **(E) BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations
389 contained in Paragraph 31 at any time, and Buyer agrees to cooperate in providing relevant information.

390 ___ ___ ___ ___ **32. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has
391 entered into a prior real estate contract, this Contract shall be subject to written cancellation of the prior
392 contract on or before _____, 20____. **In the event the prior contract is not cancelled within the**
393 **time specified, this Contract shall be null and void. Seller's notice to the purchaser under the prior**

| Buyer Initial | LL | Buyer Initial | AD | Seller Initial | | Seller Initial | |
|---|---|---|---|---|---|---|---|
| Address **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | | | | v5.0 | |

9

719

394  contract should not be served until after Attorney Review and Professional Inspections provisions of this
395  Contract have expired, been satisfied or waived.

396  ___ ___ ___ ___ **33. CREDIT AT CLOSING:** Provided Buyer's lender permits such credit to show on the
397  HUD-1 Settlement Statement, and if not, such lesser amount as the lender permits, Seller agrees to credit to
398  Buyer at Closing $_____ to be applied to prepaid expenses, closing costs or both.

399  ___ ___ ___ ___ **34. INTEREST BEARING ACCOUNT:** Earnest money (with a completed W-9 and other
400  required forms), shall be held in a federally insured interest bearing account at a financial institution
401  designated by Escrowee. All interest earned on the earnest money shall accrue to the benefit of and be paid to
402  Buyer. Buyer shall be responsible for any administrative fee (not to exceed $100) charged for setting up the
403  account. In anticipation of Closing, the Parties direct Escrowee to close the account no sooner than ten (10)
404  Business Days prior to the anticipated Closing date.

405  ___ ___ ___ ___ **35. VA OR FHA FINANCING:** If Buyer is seeking VA or FHA financing, this provision shall
406  be applicable: Required FHA or VA amendments and disclosures shall be attached to this Contract. If VA,
407  the Funding Fee, or if FHA, the Mortgage Insurance Premium (MIP) shall be paid by Buyer and *[check one]*
408  ☐ shall ☐ shall not be added to the mortgage loan amount.

409  ___ ___ ___ ___ **36. INTERIM FINANCING:** This Contract is contingent upon Buyer obtaining a written
410  commitment for interim financing on or before _____, 20____ in the amount of $_____.
411  **If Buyer is unable to secure the interim financing commitment and gives Notice to Seller within the time**
412  **specified, this Contract shall be null and void. If Notice is not served within the time specified, this**
413  **provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.**

414  ___ ___ ___ ___ **37. WELL AND/OR SEPTIC/SANITARY INSPECTIONS:** Seller shall obtain at Seller's
415  expense a well water test stating that the well delivers not less than five (5) gallons of water per minute and
416  including a bacteria and nitrate test (and lead test for FHA loans) and/or a septic report from the applicable
417  County Health Department, a Licensed Environmental Health Practitioner, or a licensed well and septic
418  inspector, each dated not more than ninety (90) days prior to Closing, stating that the well and water supply
419  and the private sanitary system are in proper operating condition with no defects noted. Seller shall remedy
420  any defect or deficiency disclosed by said report(s) prior to Closing, provided that if the cost of remedying a
421  defect or deficiency and the cost of landscaping together exceed $3,000.00, and if the Parties cannot reach
422  agreement regarding payment of such additional cost, this Contract may be terminated by either Party.
423  Additional testing recommended by the report shall be obtained at Seller's expense. If the report
424  recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with
425  a mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract
426  prior to Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than one (1) Business Day
427  prior to Closing.

428  ___ ___ ___ ___ **38. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 10,
429  within ten (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a
430  written report, dated not more than six (6) months prior to the date of Closing, by a licensed inspector
431  certified by the appropriate state regulatory authority in the subcategory of termites, stating that there is no
432  visible evidence of active infestation by termites or other wood destroying insects. Unless otherwise agreed
433  between the Parties, if the report discloses evidence of active infestation or structural damage, Buyer has the
434  option within five (5) Business Days of receipt of the report to proceed with the purchase or declare this
435  Contract null and void.

| Buyer Initial ␣L | Buyer Initial ␣AL | Seller Initial | Seller Initial |
|---|---|---|---|
| Address **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | v5.0 |

10

436 ___ ___ ___ ___ **39. POST-CLOSING POSSESSION:** Possession shall be delivered no later than 11:59 P.M.
437 on the date that is _____ days after the date of Closing ("the Possession Date"). Seller shall be responsible
438 for all utilities, contents and liability insurance, and home maintenance expenses until delivery of possession.
439 Seller shall deposit in escrow at Closing with _____, *[check one]* ☐ one percent (1%) of the
440 Purchase Price or ☐ the sum of $_____ to be paid by Escrowee as follows:
441 (a) The sum of $_____ per day for use and occupancy from and including the day after
442    Closing to and including the day of delivery of Possession, if on or before the Possession Date;
443 (b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day
444    after the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate;
445    and
446 (c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 22
447    have been satisfied. Seller's liability under this paragraph shall not be limited to the amount of the
448    possession escrow deposit referred to above. Nothing herein shall be deemed to create a
449    Landlord/Tenant relationship between the Parties.

450 LL AL ___ ___ **40. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its
451 "As Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or
452 guarantees with respect to the condition of the Real Estate have been made by Seller or Seller's Designated
453 Agent other than those known defects, if any, disclosed by Seller. Buyer may conduct an inspection at
454 Buyer's expense. In that event, Seller shall make the Real Estate available to Buyer's inspector at reasonable
455 times. Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage caused by
456 the acts or negligence of Buyer or any person performing any inspection. **In the event the inspection reveals**
457 **that the condition of the Real Estate is unacceptable to Buyer and Buyer so notifies Seller within five (5)**
458 **Business Days after the Date of Acceptance, this Contract shall be null and void. Failure of Buyer to notify**
459 **Seller or to conduct said inspection operates as a waiver of Buyer's right to terminate this Contract under**
460 **this paragraph and this Contract shall remain in full force and effect.** Buyer acknowledges that the
461 provisions of Paragraph 10 and the warranty provisions of Paragraph 3 do not apply to this Contract.

462 ___ ___ ___ ___ **41. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
463 consented to _____
464 (Licensee) acting as a Dual Agent in providing brokerage services on their behalf and specifically consent to
465 Licensee acting as a Dual Agent with regard to the transaction referred to in this Contract.

466 ___ ___ ___ ___ **42. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the
467 Real Estate by _____
468 Buyer's Specified Party, within five (5) Business Days after the Date of Acceptance. In the event Buyer's
469 Specified Party does not approve of the Real Estate and Notice is given to Seller within the time specified,
470 this Contract shall be null and void. If Notice is not served within the time specified, this provision shall be
471 deemed waived by the Parties and this Contract shall remain in full force and effect.

472 LL AL ___ ___ **43. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon
473 the Parties entering into a separate written agreement consistent with the terms and conditions set forth
474 herein, and with such additional terms as either Party may deem necessary, providing for one or more of the
475 following: *(check applicable boxes)*
476 ☐ Articles of Agreement for Deed or      ☐ Assumption of Seller's Mortgage      ☐ Commercial/Investment
477    Purchase Money Mortgage              ☐ Cooperative Apartment                ☐ New Construction
478 ☑ Short Sale                            ☐ Tax-Deferred Exchange                ☐ Vacant Land

| *Buyer Initial* LL | *Buyer Initial* AL | *Seller Initial* _____ | *Seller Initial* _____ | |
|---|---|---|---|---|
| *Address* **680 Huron Hills Trail Round Lake Heights, Illinois 60073** | | | | v5.0 |

11

721

479 THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND
480 DELIVERED TO THE PARTIES OR THEIR AGENTS.

481 The Parties represent that the text of this form has not been altered and is identical to the official Multi-Board
482 Residential Real Estate Contract 5.0.

483 July 31, 2012
484 Date of Offer                                    DATE OF ACCEPTANCE

485
486 Buyer Signature                                   Seller Signature

487
488 Buyer Signature                                   Seller Signature

489 Lloyd and Amy Lam                                 Val Sklarov
490 Print Buyer(s) Name(s) *[Required]*               Print Seller(s) Name(s) *[Required]*

491 1132 Sussex Ln.
492 Address                                           Address

493 Libertyville, Illinois 60048
494 City                State        Zip              City                State        Zip

495
496 Phone               E-mail                        Phone               E-mail

497                            FOR INFORMATION ONLY

498 Coldwell Banker          2626                     Coldwell Banker          3640
499 Buyer's Broker           MLS #                    Seller's Broker          MLS #

500 Rick Brown               16640                    Fran Coulter             31998
501 Buyer's Designated Agent MLS #                    Seller's Designated Agent MLS #

502 (847) 400-6018           (847) 415-6829           (847) 926-1697
503 Phone                    Fax                      Phone                    Fax

504 rick.brown@cbexchange.com                         fran29@aol.com
505 E-mail                                            E-mail

506 Steve Newland            steve@newlandlaw.com
507 Buyer's Attorney         E-mail                    Seller's Attorney        E-mail

508 (847) 549-0000           (847) 549-1902
509 Phone                    Fax                      Phone                    Fax

510 CASH
511 Mortgage Company         Phone                    Homeowner's/Condo Association (if any)   Phone

512 CASH
513 Loan Officer             Phone/Fax                Management Co. /Other Contact            Phone

514 ©2009, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or
515 any portion thereof is prohibited. Official form available at www.irela.org (web site of Illinois Real Estate Lawyers
516 Association).
                          Approved by the following organizations as of July 20, 2009
517               Illinois Real Estate Lawyers Association · DuPage County Bar Association · Will County Bar Association
518                          Northwest Suburban Bar Association · Chicago Association of REALTORS®
519     Mainstreet Organization of REALTORS® · Aurora-Tri County Association of REALTORS® · West Towns Board of REALTORS®
520               REALTOR® Association of Northwest Chicagoland · REALTOR® Association of the Fox Valley
521     Oak Park Area Association of REALTORS® · McHenry Association of REALTORS® · Three Rivers Association of REALTORS®
522                          North Shore–Barrington Association of REALTORS®

523  | Seller Rejection: This offer was presented to Seller on _____ , 20 ____ at ____ : ____ AM/PM
524  | and rejected on _____ , 20 ____ at ____ : ____ AM/PM ____ (Seller initials).

| Buyer Initial  LL | Buyer Initial | Seller Initial | Seller Initial |

Address **680 Huron Hills Trail Round Lake Heights, Illinois 60073**                    v5.0

12

722