<table>
<tr><td></td><td>)</td><td>**UNITED STATES DISTRICT COURT**</td></tr>
</table>

|  |  |  |
|---|---|---|
|  | ) | **UNITED STATES DISTRICT COURT** |
|  | ) | **NORTHERN DISTRICT OF ILLINOIS** |
| Val Sklarov, | ) |  |
|     Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| First Bank of Highland Park | ) |  |
| Fidelity National Title Group | ) |  |
| Fidelity National Finance | ) |  |
| Jill Takiff Hirsh | ) |  |
| Randy L. Green | ) |  |
| Eric A. Ephraim, | ) |  |
|     Defendants. | ) |  |
|  | ) | VERIFIED COMPLAINT |
|  | ) |  |
|  | ) |  |

## PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

**NOW COMES, Val Sklarov (hereinafter referred to as "SKLAROV" or Plaintiff)** by and through the undersigned attorney, files this First Verified Complaint for violations of Title 15 U.S.C. §1692 et seq. Fair Debt Collection Practices Act (hereinafter known as "FDCPA"), 15 U.S.C §1601 et seq. Truth in Lending Act (hereinafter known as "TILA"), 42 U.S.C §3601 et seq. Fair Housing Act (hereinafter known as "FHA") and Declaratory Judgment and Injunctive Relief, for damages based the fact that on or about April 10, 2018 First Bank of Highland park (hereinafter known as "FBHP") provided documents to Plaintiff for the first time concerning the sale of the real property commonly known 680 Huron Hills Trial, Round Lake Heights, Illinois 60073 (hereinafter known as "Property") after denying and ignoring several requests from attorneys for Plaintiff. At no point prior to April 10, 2018, Plaintiff consented, in writing or verbally, to the sale of Property. In furtherance, the Plaintiff hereby states as follows:

# I. <u>INTRODUCTION</u>

1. This is a civil rights action under 42 U.S.C.§1983 for violations of Plaintiff's constitutional rights as enumerated under the First, Fifth, Seventh and Fourteenth Amendments to the United States Constitution.

2. Plaintiff invokes the Power of this Court's rights for the deprivation of Plaintiff's Due Process rights; deprivation of Plaintiff's right to redress grievances and access to court; deprivation of Plaintiff's right to property; and for the deprivation of Plaintiff's right to have a Trial by Jury, as afforded under the First, Fifth, Seventh, and Fourteenth Amendments of the United States Constitution, and, as found in the Illinois State Constitution.

3. Plaintiff likewise seeks redress for violations by the Defendants as afforded Plaintiff under Title 15 U.S.C. §1692 et seq. and state applicable consumer laws to be included in Plaintiff's Complaint proving that this case and the wrongful sale of Property were based upon forged and fraudulent documents.

4. Additionally, Plaintiff invokes this Court's authority to determine salient questions of contract: including, but not limited to, controversies arising out of potential fraudulent and forged documents and misrepresentations to the court.

5. Plaintiff also invokes this Court's authority to order an adversarial hearing on the intentional and malicious use of forged and fraudulent documents in an attempt to deny Plaintiff their procedural and substantive due process rights.

6. Plaintiff lastly invokes this Courts authority under Title 15 U.S.C. § 1692(e)(k).

7. Plaintiff is seeking actual damages, treble damages, statutory and punitive damages, and award the financial damages suffered by Plaintiff for this Federal District Court has ancillary jurisdiction to hear this case and rule on the relief requested to vacate, alter, amend  pursuant

to Federal Rule of Civil Procedure 59 and any another amount deemed to be prudent by the Court, for their pain and suffering due to these omissions by these named Defendants and yet unnamed perpetrators of the Fair Debt Collection Practices Act Title 15 U.S.C. §1692 et seq.

8. Plaintiff seeks damages caused by the Defendants for the intentional infliction of mental distress; negligent infliction of mental distress, and for the creation of forged and fraudulent Promissory Note and Mortgage thus committing fraud upon the court by the use of extrinsic and intrinsic fraud, fraudulent misrepresentation and breach of the implied covenant of good faith and fair dealings.

9. The rapacious Defendants, intentionally, wantonly, deliberately, maliciously, fallaciously and willfully conspired in a well-orchestrated scheme to illegally take possession of Plaintiff's home through a scheme to defraud both the Plaintiff's and the Illinois Courts.

10. The Defendants are supposed to be trusted organizations that the American people rely on to handle and care for their hard-earned money. We as a society cannot stand for supposedly trusted organizations to take advantage of the American people. In fact, when banks fell into trouble, the American people had their hard-earned money be directed into the Troubled Asset Relief Program (hereinafter known as "TARP"), which helped prevent banks from going out of business. The TARP was a loss on the American people's hard-earned capital, where banks used rapacious tactics in order to line their pockets. Defendant's in this case employed similar tactics in order to deprive Plaintiff of his hard-earned money.

11. This Court must therefore provide the requested relief based upon numerous U.S. Supreme Court decisions that make it very clear that judgment procured through extrinsic fraud and even intrinsic fraud upon the Courts is enough to reverse or vacate the illegal sale and sanction the participants of this conspiratorial enterprise.

## II.  JURISDICTION AND VENUE

12. Plaintiff's domicile is Georgia.

13. FBHP is a duly authorized Bank & Trust authorized to conduct banking and trust activities in the state of Illinois by the Illinois Department of Financial and Professional Regulation bearing Registration Number ISB.0017814 with its principal place of business at 1835 First Street, Highland Park, Illinois 60035.

14. Fidelity National Title Group and their parent company Fidelity National Finance (hereinafter collectively known as "Fidelity") is duly authorized to conduct insurance and financial services businesses across the nation with its principal place of business at 601 Riverside Avenue, Jacksonville, FL 32204.

15. Defendant Jill Takiff Hirsh's domicile is Illinois.

16. Defendant Randy L. Green's domicile is Illinois.

17. Defendant Eric A. Ephraim's domicile is Illinois.

18. This action arises under the United States Constitution, particularly, for violations of Plaintiffs' rights under the First, Fifth, Seventh and Fourteenth amendments; and, under Federal Law, as enumerated under 28 U.S.C. §§2201, and 2202.

19. This Court has original jurisdiction over Plaintiff's claim by operation of 28 U.S.C. §§1331 and, supplemental jurisdiction over Plaintiff's state Claims, pursuant to 28 U.S.C. §1367.

20. This Court is vested with authority to issue the requested Declaratory Relief, pursuant to 28 U.S.C. §2201 and, as further under Rule 57, of the Federal Rules of Civil Procedure.

21. This Court has the authority to issue relief from a Judgment under Federal Rules of Civil procedure 60(d)(1) and (3) "independent action" and pursuant to 28 U.S.C. §§2201 and 2202.

22. This Court has the authority to award the requested Injunctive Relief, under Rule 65 of the Federal Rules of Civil Procedure, and pursuant to 28 U.S.C. §§2202.

23. This Court has the authority to award Plaintiffs, damages arising under violations of Title 15 U.S.C. §1692 §1692k(d). The jurisdiction of this Court is not disputed.

24. Plaintiffs aver venue is proper under 28 U.S.C. §1391 as the claims set forth in this complaint arose here.

25. This Court has the right and duty to invoke sanctions under Federal Rules of Civil Procedure 11 against these Defendants for violating their Professional Codes of Conduct for the illegal sale of Property.

26. This Court has the authority to void the Sale.

27. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000.00.

### III.   PARTIES

28. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

29. Plaintiff and at all times material and relevant hereto, is a consumer according to Title 15 U.S.C. (§1692(a) (3) [§803(3)] and is identified under §1692e (§807) as a "least sophisticated consumer" or even possibly the "least susceptible consumer" under (§1692(f) [§808] according to the act.

30. At all times material and relevant hereto, Plaintiff is alleged to have owed a "debt" ("transaction") of a personal, family, and/or household nature as defined by the FDCPA, Title 15 U.S.C. §1692a(5) [§803(5)].

31. FBHP is a Federal Deposit Insurance Corporation (hereinafter known as "FDIC") member bank. The FDIC was created post 1929 crash in 1933 to instill trust and confidence in the American financial system, particularly banks. The American public depends on FDIC and its member banks to uphold the law and safeguard depositor's assets. The American public also trusts that all FDIC members will not abuse its clients, mismanage their deposits or engage in other shady practices which led to the 1929 financial crash. The public has come to trust and depend on the FDIC symbol which banks display so prominently and proudly. FBHP like all banks displays the FDIC membership symbol and FBHP took advantage of its FDIC membership charter to sell plaintiffs asset and unjustly enrich itself. FBHP misled Plaintiff that as an FDIC chartered member, it complies with Federal laws."

32. At all times material and relevant hereto, Defendants have advanced and willfully, deliberately, with malicious intent participated in a well-organized plan to steal homes, where Defendants had privileged information about the finances of the Property.

### IV. FACTS COMMON TO ALL COUNTS

33. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

34. On or about August 7, 2007 Plaintiff and FBHP entered into a mortgage for the real property commonly known 680 Huron Hills Trial, Round Lake Heights, Illinois 60073 to secure an indebtedness not to exceed $3,860,000.00, a copy of which is attached as Exhibit A.

35. On or about October 9, 2007 Plaintiff and FBHP entered into a modification of mortgage concerning the Property which raised the maximum indebtedness to $6,280,500.00 (the "Indebtedness"), a copy of which is attached as Exhibit B.

36. The Indebtedness was secured by sixteen other residential properties either owned jointly with or exclusively by Plaintiff's ex-wife Sharon Sklarov(the "Residential Properties").

37. At no time has FBHP provided an accounting to Plaintiff concerning the Residential Properties.

38. On information and belief, there are assets of Plaintiff being held by Defendant in the name of Plaintiff's ex-wife Sharon Sklarov that are unknown to Plaintiff.

39. On information and belief, there are assets being held by Defendant, or which Defendant has a security interest in, in the name of Sharon Sklarov.

40. On information and belief, the assets discussed in paragraphs 36, 38 and 39 are and were being used to pay Plaintiff's ex-wife Sharon Sklarov remuneration by the Defendant.

41. On information and belief, the assets discussed in paragraphs 36, 38 and 39 are in the process of being sold.

42. The Defendants have preferred Sharon Sklarov over Plaintiff in a number of ways at the detriment of Plaintiff.

43. FBHP has filed a foreclosure action against Plaintiff in the Circuit Court of Lake County entitled First Bank of Highland Park v. Val Sklarov et al., 2016 CH 1548 (the "Lake County Matter") to foreclose on a mortgage against the real property commonly known as 460 Hunter Lane, Lake Forest, Illinois 60045 (the "Lake Forest Property").

44. The Lake Forest Property was at one time used to secure the indebtedness.

45. On April 10, 2018 FBHP provided documents to Plaintiff for the first time concerning the sale of the Property (the "Documents") after denying and ignoring several requests from attorneys for Plaintiff and Plaintiff for the same on April 10, 2018, the Documents are attached as Exhibit C.

46. The Documents produced by FBHP show that FBHP sold the Property allegedly in the name of Plaintiff but without any signature from Plaintiff on the documents.  Exhibit C.

47. At no time did Plaintiff agree to, or execute any documents for, a deed in lieu of foreclosure, a short sale in foreclosure, a consent foreclosure, a common law strict foreclosure, a judicial foreclosure or a power of sale for the Property.

48. FBHP received $100,761.13 pursuant to the sale of the Property.

49. Plaintiff received no funds pursuant to the sale of the Property.

## V.      **FIRST CLAIM FOR RELIEF**

### **FORGERY**

50. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

51. Without the consent and signature of the Plaintiff, the illegal sale of the Property cannot be upheld and attached exhibits portray that no consent existed.

52. Through discovery, plaintiff intends to reveal to the tribunal, Defendants must have forged a number of legal documents in order to consummate the illegal sale of the Property.

53. Exhibit C shows a Contract for the Sale of Property and under the contract, no signature by the Plaintiff is present. Further, on a few pages, the initials "VS" in a circle appears and the Plaintiff maintains that those initials were not placed there by him, nor has Plaintiff given authority to any other party to insert initials on his behalf.

54. The Defendants knew or should have known that their actions were based upon forged and fraudulent documents forcing Plaintiffs to spend thousands of dollars trying to save their home from these violations of the FDCPA including but not limited to Title 15 U.S.C. §1692

§1692d(1), [§806d(1)] §1692e(2)(A) [§807e(2)(A)], §1692e(3)[§807e(3)],
§1692e(4)[§807e(4),]

## VI.   SECOND CLAIM FOR RELIEF

## FRAUD AND MISREPRESENTATION

55. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

56. During the deposition of FBHP's Patrick Stallone and prior to FBHP providing the Documents, Mr. Stallone testified on behalf of FBHP that FBHP followed all legal requirements concerning the sale of the Property and that Plaintiff executed the necessary documents for FBHP to sell the Property.

57. The Documents do not contain the signature of Plaintiff.

58. Plaintiff did not consent to the sale of the Property.

59. FBHP did not follow the requirements of Illinois law when it sold the Property and terminated Plaintiff's interest in the Property.

60. On information and belief, Mr. Stallone knew at the time of his deposition that Plaintiff did not agree to, or execute the necessary documents, for FBHP to sell the Property.

61. Plaintiff relied on the statements made by Mr. Stallone to his detriment.

62. As a direct and proximate result of the fraudulent statements Plaintiff incurred damages.

## VII.   THIRD CLAIM FOR RELIEF

## FAIR DEBT COLLECTION PRACTICES ACT

63. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

64. The above named Defendants have, intentionally and wantonly conspired together to violate the mentioned above and never produced the files as required by §1692e(3).

65. Defendants knowingly misrepresented material facts by the use of extrinsic fraud thus giving this Court the legal authority to grant the relief requested.

66. Plaintiff seeks damages caused by the Defendants for the intentional infliction of mental distress; negligent infliction of mental distress, and for the extreme and egregious measures in order illegally sell Property, thus committing fraud upon the court by the use of extrinsic and intrinsic fraud, fraudulent misrepresentation and breach of the implied covenant of good faith and fair dealings.

67. Plaintiff demands punitive damages which are offered in all claims.

68. Plaintiff demands that judgment be entered against Defendants for actual damages pursuant to 15 U.S.C. § 1692k (a) (1).

69. Plaintiff prays that judgment be entered against aggregate defendants for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A).

70. Plaintiff prays that the Court awards costs and reasonable attorney's fees (when and if applicable) pursuant to U.S.C. §1692k(a)(3).

71. This Court must accept all the allegations in this Complaint as true and this Court must admit there are at least five claims for Relief that can be granted and all it takes is one claim or one violation to survive a Motion to Dismiss.

72. Plaintiff reserves the right to file an amended complaint and submit other affidavits from retired banking executives, accountants and other expert witnesses and well as the forensic examiners.

73. Plaintiff reserves the right to submit his supporting brief on why this Court has authority to grant this relief requested under the Supreme Court's ruling: "…every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside the fraudulently begotten judgment…. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud". Mr. Justice Black also said "... tampering with the administration of justice as indisputably shown here involves far more than injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistent with the good order of society." See the U.S. Supreme Court case Throckmorton which explains how this Federal Court has the right to grant this Plaintiff relief for violations of this Plaintiff's Constitutional rights because of Fraud upon the Court.

## IIX.  FOURTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

74. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

75. The Mortgage states in relevant part:

**Sale of the Property.**  To the extent permitted by applicable law, Borrower [Plaintiff] and Grantor [FBHP] hereby waive any and all right to have the Property marshalled.  In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.  Lender shall be entitled to bid at any public sale on all or any portion of the Property. See Exhibit A page 9.

76. 35 ILCS 5/15-1401 through 735 ILCS 5/15-15-1405 is entitled "Methods of Terminating Mortgagor's Interest in Real Estate".

77. FBHP breached the Mortgage by failing to terminate Plaintiff's interest in the property as required under the Mortgage and pursuant to 735 ILCS 5/15-1401 through 735 ILCS 5/15-15-1405 before its sale of the Property.

78. As a proximate cause of FBHP's breach Plaintiff has sustained damages.

## IX.     FIFTH CLAIM FOR RELIEF

### CONVERSION

79. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

80. Conversion is a tort that exposes you to liability for damages in a civil lawsuit. It applies when someone intentionally interferes with personal property belonging to another person. To make out a conversion claim, a plaintiff must establish four elements:

   a. First, that the plaintiff owns or has the right to possess the personal property in question at the time of the interference;

   b. Second, that the Defendants intentionally interfered with the plaintiff's personal property (sometimes also described as exercising "dominion and control" over it);

   c. Third, that the interference deprived the plaintiff of possession or use of the personal property in question; and

   d. Fourth, that the interference caused damages to the plaintiff.

81. Plaintiff contends that he had over $50,000.00 USD in personal property within the Property.

82. Defendants intentionally interfered with the personal property by illegally selling the premises without the knowledge of Plaintiff.

83. The Defendants has deprived Plaintiff of his rightful belongings.

84. The interference has caused Plaintiff to permanently lose domain and possession of the personal property.

## X.     SIXTH CLAIM FOR RELIEF

## DEPRIVATION OF RIGHTS

85. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

86. Under 42 U.S.C § 1983, Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

87. Plaintiff acquired Property for the specific purpose of improving it, renovating it, and generally speaking to "add value" to what is generally considered an "appreciating asset."

88. Under the Amendment V to the US Constitution, James Madison wrote in relevant part "No person shall be… deprived of life, liberty, or property, without due process of law."

89. Defendants has illegally sold Plaintiff's property with no due process rights afforded.

90. Defendants has committed an egregious act in order to purposely deprive the Plaintiff's right to own property and to make a living, without just cause.

## XI.     SEVENTH CLAIM FOR RELIEF

## THE EQUAL CREDIT OPPORTUNITY ACT

91. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

92. The Equal Credit Opportunity Act (hereinafter referred to as "ECOA") (codified at 15 U.S.C. § 1691 et seq.), enacted 28 October 1974, that makes it unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction, on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The law applies to any person who, in the ordinary course of business, regularly participates in a credit decision, including banks, retailers, bankcard companies, finance companies, and credit unions.

93. Defendants gave preferential treatment to Sharon Sakharov with regards to property in the same or similar situation.

94. Defendants did not deprive Sharon of her Property as they did with Plaintiff, despite the fact that this matter arises out of the same or similar circumstance.

95. Defendants sold Property illegally due to discrimination on the basis of gender.

## XII.    EIGTH CLAIM FOR RELIEF

### FAIR HOUSING ACT

96. Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

97. The Fair Housing Act (hereinafter referred to as "FHA") was enacted as Title VIII of the Civil Rights Act of 1968, and codified at 42 U.S.C. 3601-3619, with penalties for violation at 42 U.S.C. 3631 et seq.

98. The FHA forbids discrimination in all aspects of residential real-estate related transactions, including:

    a. making loans to buy, build, repair, or improve a place to live;

    b. selling, brokering, or appraising residential real estate; and

    c. selling or renting a place to live

99. Defendants sold Property illegally due to discrimination on the basis of gender.

## XIII.  <u>NINTH CLAIM FOR RELIEF</u>

## <u>PROMISSORY ESTOPPEL</u>

100.  Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

101.  Under Illinois law, promissory estoppel is an offensive, equitable cause of action frequently asserted by a party as an alternative to a breach of contract claim. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.* 906 N.E 2d 520, 524, 528 (Ill. 2009).

102.  Illinois Supreme Court has explained, the doctrine of promissory estoppel has been incorporated into the Restatement (Second) of Contracts as section 90 and provides, in relevant part, that a promise which the promisor should reasonably expect to induce action or forbearance is binding if the injustice can be avoided only by enforcement of the promise. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.* 906 N.E 2d 523 (Ill. 2009).

103.  Plaintiff is asserting this Ninth Claim for Relief and an alternative to the breach of contract claim under Fourth Claim for Relief and portrayed above.

104.  Plaintiff relied on modification documents and altered his financial circumstances in reliance of the fact that Defendants stated they would not sell the property without Plaintiff's written consent to sell.

105.    Plaintiff, until discovery of the illegal sale, relied on the property financially and has thus

incurred significant damages along with emotional suffering.

## XIV.    TENTH CLAIM FOR RELIEF

## NEGLIGENCE

106.    Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified

Complaint as if they were printed verbatim herein below.

107.    735 ILCS 5/15-1405 states:

No real estate within this State may be sold by virtue of any power of sale contained in a
mortgage or agreement, and all such mortgages may only be foreclosed in accordance with this
Article.

108.    Pursuant to 735 ILCS 5/15-1405 FBHP owed Plaintiff an independent duty not to sell

Property except as provided for discussed in 735 ILCS 5/15-1405.

109.    Defendants breached this duty by illegally selling Property without following the

requirements under Illinois law.

110.    As a direct result and proximate result of Defendants, breach of its duty owed to Plaintiff,

Plaintiff incurred significant damages.

## XV.    ELEVENTH CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

111.    Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified

Complaint as if they were printed verbatim herein below.

112.    Plaintiff and FBHP had a complex business relationship for a period of nearly 20 years.

113.    During this relationship Plaintiff and FBHP entered into countless financial transactions

exceeding $50,000,000.00.

114.    Plaintiff was one of FBHP largest clients from the 1990s through the 2010s.

115.   As a result of the relationship between Plaintiff and FBHP, FBHP owed Plaintiff a fiduciary

duty.

116.   FBHP breached the fiduciary duty owed to Plaintiff by its sale of the Property without the

consent of Plaintiff or by following the requirements of Illinois law.

117.   As a direct and proximate result of FBHP's breach of the fiduciary duty owed to Plaintiff,

Plaintiff sustained damages.

## XVI.   TWELFTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

118.   Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified

Complaint as if they were printed verbatim herein below.

119.   To state a claim for unjust enrichment, "a plaintiff must allege that the Defendants has

unjustly retained a benefit to the plaintiff's detriment, and that Defendants' retention of the

benefit violates the fundamental principles of justice, equity, and good conscience." *HPI*

*Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672,

679 (1989).

120.   Unjust enrichment is not an independent cause of action. *Martis v. Grinnell Mutual*

*Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (2009) (citing *Mulligan v.*

*QVC, Inc.*, 382 Ill. 2d 620, 631, 888 N.E.2d 1190, 1200 (1989)). Rather, "it is a condition that

may be brought about by unlawful or improper conduct as defined by law, such as fraud,

duress, or undue influence" (internal quotation marks omitted) (*Alliance Acceptance Co. v.*

*Yale Insurance Agency, Inc*., 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995)), or, alternatively, it may be based on contracts which are implied in law (*Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 425, 703 N.E.2d 518, 526 (1998)).

121.    FBHP was unjustly enriched by the sale of the Property in the amount of $100,761.13.

122.    Plaintiff has suffered an injury as a result of FBHP's unjust enrichment.

## XVII.  RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

123.    The Racketeer Influenced and Corrupt Organizations Act (hereinafter known as "RICO") is a United States federal law that provides for extended criminal penalties and a civil cause of action for acts performed as part of an ongoing criminal organization.

124.    RICO focuses specifically on racketeering and allows the leaders of a syndicate to be tried for the crimes they ordered others to do or assisted them in doing, closing a perceived loophole that allowed a person who instructed someone else to.

125.    Defendants collectively colluded in order to defraud and steal property from Plaintiff.

126.    The meaning of racketeering activity is set out at 18 U.S.C. § 1961. As currently amended it includes; any act of bribery, counterfeiting, theft, embezzlement, fraud, dealing in obscene matter, obstruction of justice, slavery, racketeering, gambling, money laundering, commission of murder-for-hire, and many other offenses covered under the Federal criminal code (Title 18).

## XVIII. CIVIL CONSPIRACY

127.    A civil conspiracy or collusion is an agreement between two or more parties to deprive a third party of legal rights or deceive a third party to obtain an illegal objective.

128.   A conspiracy may also refer to a group of people who make an agreement to form a partnership in which each member becomes the agent or partner of every other member and engage in planning or agreeing to commit some act.

129.   It is not necessary that the conspirators be involved in all stages of planning or be aware of all details. Any voluntary agreement and some overt act by one conspirator in furtherance of the plan are the main elements necessary to prove a conspiracy.

130.   A conspiracy may exist whether legal means are used to accomplish illegal results, or illegal means used to accomplish something legal. Even when no crime is involved, a civil action for conspiracy may be brought by the persons who were damaged. *Salinas v. United States*, 522 U.S. 52, 63—65 (1997).


## XIX.   <u>JUDICIAL NOTICE</u>

131.   Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

132.   The **<u>Troubled Asset Relief Program</u>** is a program of the United States government to purchase toxic assets and equity from financial institutions to strengthen its financial sector that was passed by a Democratic Party controlled Congress and signed into law by Republican Party President George W. Bush on October 3, 2008. It was a component of the government's measures in 2008 to address the subprime mortgage crisis. The TARP program originally authorized expenditures of $700 billion. **<u>The Emergency Economic Stabilization Act of 2008</u>** created the TARP program. The **<u>Dodd–Frank</u>** Wall Street Reform and **<u>Consumer Protection Act</u>**, signed into law in 2010, reduced the amount authorized to $475 billion. By October 11, 2012, the Congressional Budget Office stated that total disbursements would be

$431 billion, and estimated the total cost, including grants for mortgage programs that have not yet been made, would be $24 billion. On December 19, 2014, the U.S. Treasury sold its remaining holdings of Ally Financial, essentially ending the program. TARP recovered funds totaling $441.7 billion from $426.4 billion invested, earning a $15.3 billion profit or an annualized rate of return of 0.6% and perhaps a loss when adjusted for inflation.

133.    The **Federal Deposit Insurance Corporation** is a United States government corporation providing deposit insurance to depositors in U.S. commercial banks and savings institutions. The FDIC was created by the **1933 Banking Act**, enacted during the Great Depression to restore trust in the American banking system. More than one-third of banks failed in the years before the FDIC's creation, and bank runs were common. The insurance limit was initially US$2,500 per ownership category, and this was increased several times over the years. Since the passage of the **Dodd–Frank** Wall Street Reform and Consumer Protection Act in 2011, the FDIC insures deposits in member banks up to US$250,000 per ownership category. The FDIC and its reserves are not funded by public funds; member banks' insurance dues are the FDIC's primary source of funding. The FDIC also has a US$100 billion line of credit with the **United States Department of the Treasury**. Only banks are insured by the FDIC; credit unions are insured up to the same insurance limit by the **National Credit Union Administration**, which is also a government agency.

134.    "... [Rule 60(b)] stipulates that 'This rule does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud upon the court. " The Supreme Court in **United States v. Throckmorton.**

135. A court may at any time set aside a judgment for after discovered fraud upon the court. **Hazel-Atlas Glass v. Hartford** . . . Rule 60(b) . . . expressly does not limit the power of a court to entertain an action for that purpose."

136. Federal Courts can always set aside a decision that has been obtained through extrinsic fraud. **Cord v. Smith**, 370 F.2d 418 (C.A. Cal. 1966).

137. **Shekhter of NMS Properties vs. AEW Capital** in Los Angeles Superior Court the Court ruled in favor of AEW Capital and awarded over 6 Million dollars against Shekhter for presenting forged and fraudulent documents to the court to support his complaint against AEW, plus the real estate developer (NMS) was ordered to vacate nine properties that were part of the NMS/AEW joint venture.

138. In order to understand the meaning of "fraud on the court" is it imperative that this court reference **Hazel Atlas Glass Co. v. Hartford Empire Co.** for a full understanding of the meaning of the phrase. There is little doubt that in the majority of states the only type of fraud upon which a court of equity will upset a judgment is extrinsic fraud. **United States v. Throckmorton** 98 U.S. 61, 68 (1878). Clearly the Throckmorton case established that extrinsic fraud would vacate a judgment that was procured through the extrinsic creation of a fraudulent Promissory Note and a Mortgage or Deed of Trust (without any statutory limit of one year).

139. Justice Black even stated that the agencies of public justice are not so impotent that they must always be mute and helpless (to) victims of deception and fraud. Justice Black even stated that tempering with the administration of justice as indisputable as shown in this particular case involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public institutions in which fraud cannot complacently be

tolerated and is contrary and not consistent with good order of society. In another United States Supreme Court decision, **Universal Oil Products v. Root Refining Co.**, 328 U.S. 575 (1945), cited the Hartford case, Justice Black additionally stated, "The inherent power of a federal court to investigate whether a judgment was obtained by fraud is beyond question."

140. It is a wrong against the institutions set up to protect and safeguard the public institutions in which fraud cannot complacently be tolerated consistent with good order or society. In another United States Supreme Court decision, **Universal Oil Products v. Root Refining Co.**, 328 U.S. 575 (1945).

141. The **Fair Debt Collection Practices Act** (FDCPA), Pub. L. 95-109; 91 Stat. 874, codified as 15 U.S.C. § 1692 –1692p, approved on September 20, 1977 (and as subsequently amended) is a consumer protection amendment, establishing legal protection from abusive debt collection practices, to the Consumer Credit Protection Act, as Title VIII of that Act. The statute's stated purposes are: to eliminate abusive practices in the collection of consumer debts, to promote fair debt collection, and to provide consumers with an avenue for disputing and obtaining validation of debt information in order to ensure the information's accuracy. The Act creates guidelines under which debt collectors may conduct business, defines rights of consumers involved with debt collectors, and prescribes penalties and remedies for violations of the Act. It is sometimes used in conjunction with the **Fair Credit Reporting Act**.

142. The 1968 **Fair Housing Act** is a federal act in the United States intended to protect the buyer or renter of a dwelling from seller or landlord discrimination. Its primary prohibition makes it unlawful to refuse to sell, rent to, or negotiate with any person because of that person's inclusion in a protected class. The goal is a unitary housing market in which a person's background (as opposed to financial resources) does not arbitrarily restrict access. Calls for

open housing were issued early in the twentieth century, but it was not until after World War II that concerted efforts to achieve it were undertaken. The fair housing act played an important part in the Civil rights movement causing people to see how they needed to give African Americans equal rights with things including fair housing.

143. The **Equal Credit Opportunity Act** (ECOA) is a United States law (codified at 15 U.S.C. § 1691 et seq.), enacted 28 October 1974, that makes it unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction, on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The law applies to any person who, in the ordinary course of business, regularly participates in a credit decision, including banks, retailers, bankcard companies, finance companies, and credit unions. The part of the law that defines its authority and scope is known as **Regulation B**, from the (b) that appears in Title 12 part 1002's official identifier: 12 C.F.R. § 1002.1(b) (2017). Failure to comply with **Regulation B** can subject a financial institution to civil liability for actual and punitive damages in individual or class actions.

144. The **Fair Credit Reporting Act** (FCRA), 15 U.S.C. § 1681, is U.S. Federal Government legislation enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies. It was intended to protect consumers from the willful and/or negligent inclusion of inaccurate information in their credit reports. To that end, the FCRA regulates the collection, dissemination, and use of consumer information, including consumer credit information. Together with the **Fair Debt Collection Practices Act**,

the FCRA forms the foundation of consumer rights law in the United States. It was originally passed in 1970, and is enforced by the US Federal Trade Commission, the Consumer Financial Protection Bureau and private litigants.

145.     RICO was enacted by section 901(a) of the **Organized Crime Control Act** of 1970 (Pub.L. 91–452, 84 Stat. 922, enacted October 15, 1970) and is codified at 18 U.S.C. ch. 96 as 18 U.S.C. §§ 1961–1968. G. Robert Blakey, an adviser to the United States Senate Government Operations Committee, drafted the law under the close supervision of the committee's chairman, Senator John Little McClellan. It was enacted as Title IX of the **Organized Crime Control Act of 1970** and signed into law by Richard M. Nixon. While its original use in the 1970s was to prosecute the Mafia as well as others who were actively engaged in organized crime, its later application has been more widespread.

XX.     ACCOUNTING

146.     Plaintiff repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

147.     FBHP owed Plaintiff a fiduciary duty pursuant to the ongoing banking and financial relationship between FBHP and Plaintiff.

148.     FBHP breached the fiduciary duty it owed to Plaintiff by, among other things, selling the Property without the consent of Plaintiff in violation of Illinois law and forging the signature of Plaintiff to effectuate the sale.

149.     FBHP committed fraud against Plaintiff by, among other things, selling the Property without the consent of Plaintiff in violation of Illinois law and forging the signature of Plaintiff to effectuate the sale.

150.	On information and belief, there are assets of Plaintiff being held by Defendant in the name of Plaintiff's ex-wife Sharon Sklarov, including but not limited to the Residential Real Property, that are unknown to Plaintiff.

151.	On information and belief, there are assets being held by Defendant, or which Defendant has a security interest in, in the name of Sharon Sklarov.

152.	On information and belief, these assets are and were being used to pay Plaintiff's ex-wife Sharon Sklarov renumeration by the Defendant.

153.	On information and belief, these assets are in the process of being sold.

154.	On information and belief, confidential arrangements were entered in to by and between the Defendant and ex-wife Sharon Sklarov at the detriment of Plaintiff.

155.	There is no adequate remedy at law because the property that is being sold is real property which cannot be replaced with money damages.

156.	In the alternative, the lack of an adequate remedy at law is not necessary because FBHP breached the fiduciary duty owed to Plaintiff.

157.	Plaintiff seeks an accounting of all assets in which FBHP alleges any interest in of Plaintiff or that of his ex-wife Sharon Sklarov.

## XXI.  <u>CONCLUSION</u>

WHEREFORE, Plaintiff SKLAROV by and through the undersigned attorney, hereby demands this court to invoke this Judge's Oath and Duty as envisioned by our Founding Fathers. The illegal sale of Property should be reversed and remanded back to the Plaintiff or in the alternative Defendants should be ordered to reimburse plaintiff for loss of property and the revenue expected from the property. Being that irrefutable evidence has been produced before this Court of operating with fraudulent actions and misrepresentations thus violating this Plaintiff's right to

a fair and impartial trial and based upon this extrinsic fraud the eviction should not have occurred.

Defendants should be ordered to compensate Plaintiff for general, compensatory, punitive damages, and for all further relief this Court deems just.

**JURY TRIAL DEMANDED**

Atlanta, Georgia
July 1, 2019

Respectfully submitted,

Val Sklarov
*Attorney for Plaintiff*
One Atlantic Center
1201 Peachtree Avenue
Suite 2300
Atlanta, GA 30309

**<u>Verification by Certification</u>**

Under penalties as provided by law pursuant to Section 1-1-9 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to the matters therein stated to be on information and belief and as to such matters the undersigned certifies aforesaid that he verily believes the same to be true.

Val Sklarov